IN THE COURT OF APPEALS OF THE STATE OF IDAHO

Docket No. 41063

| | | |
|---|---|---|
| STATE OF IDAHO, | ) | 2015 Opinion No. 20 |
| | ) | |
| Plaintiff-Respondent, | ) | Filed: April 8, 2015 |
| | ) | |
| v. | ) | Stephen W. Kenyon, Clerk |
| | ) | |
| BRANT LEE EVERSOLE, | ) | |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |

Appeal from the District Court of the Seventh Judicial District, State of Idaho, Bingham County. Hon. Darren B. Simpson, District Judge.

Order denying motion to dismiss, affirmed; order denying motion to suppress evidence, vacated, and case remanded.

Sara B. Thomas, State Appellate Public Defender; Justin M. Curtis, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Russell J. Spencer, Deputy Attorney General, Boise, for respondent.

_____

LANSING, Judge

Brant Lee Eversole entered a conditional guilty plea to a charge of operating a vehicle while under the influence of alcohol, preserving his right to appeal orders denying a suppression motion and a motion to dismiss. He argues that evidence of his blood alcohol content should have been suppressed. He also contends that the charges should have been dismissed because his vehicle was not operational.

I.

BACKGROUND

An officer observed Eversole in the driver's seat of a truck located in front of a bar. The truck was high-centered on a two-foot tall "brick berm," such that the rear wheels of the vehicle did not touch the ground. Two other men were providing help, trying to get the vehicle off of the

1

berm by lifting the vehicle with a jack. In the officer's view, the jack strategy was unlikely to work and he described it as a "feeble" effort, but he also opined that their strategy might work if the jack was positioned "a little bit differently."[1]

The officer approached the individuals, and his observations led him to believe that Eversole was intoxicated. The officer began administering field sobriety tests. Eversole attempted to complete some of the field sobriety tests, but refused to complete them all. Because the attempted tests indicated intoxication, Eversole was arrested. Thereafter, Eversole additionally refused to submit to a breath alcohol concentration test. Eversole was then taken to a hospital and his blood was drawn. The blood test showed that Eversole had an alcohol concentration of .279 grams of alcohol per one hundred (100) cubic centimeters of blood, well over the threshold required to prove "excessiveness" as defined in Idaho Code § 18-8004C. Eversole was charged with operating a motor vehicle while under the influence of alcohol in violation of I.C. §§ 18-8004(1)(a), 18-8005(9).

Eversole filed a motion to suppress the results of his blood draw. Rather than conducting an evidentiary hearing on the suppression motion, the parties stipulated to the facts to be considered by the district court, including the following:

> At the time of his arrest, Mr. Eversole refused to provide a breath sample for the purpose of determining his blood alcohol content.
> Upon the Defendant's refusal to provide a breath sample, Deputy Morgan transported the Defendant to Bingham Memorial Hospital where Tiffany Henderson, a technician in the lab, drew Mr. Eversole's blood pursuant to Deputy Morgan's request.

Eversole conceded that under Idaho statutes, as applied in then-current Idaho case law, persons driving within the state gave implied consent to warrantless blood draws. Nevertheless, he argued that the Idaho precedents regarding warrantless blood draws had been abrogated by a recent United States Supreme Court decision. The district court held that the Idaho precedents had not been overruled and that an objection to alcohol testing does not invalidate statutorily implied consent. Accordingly, it denied Eversole's suppression motion.

---

[1] The officer believed that the most expedient means of moving the car would have been to pull the vehicle loose using a tow strap. The vehicle was eventually towed off by a tow truck. However, at the time the officer observed the vehicle, he did not see any other vehicles that could be used to tow the truck off of the berm.

Eversole also filed a motion to dismiss on the basis that the State could not prove that the vehicle was operable at the time he was in it. The district court disagreed and held there was some evidence that Eversole and his companions could have moved the vehicle within a short time, rendering it operable. On this basis, it held that the question of operability should be submitted to the trier of fact.

Following the denial of the suppression motion and the motion to dismiss, Eversole entered a conditional *Alford*[2] plea preserving his right to appeal the denial of these two motions.

## II.

## ANALYSIS

On appeal, Eversole argues that the district court erred by denying his motion to dismiss and by denying his suppression motion.

### A. The District Court Properly Denied the Motion to Dismiss

This Court reviews a district court's decision on a motion to dismiss a criminal action for an abuse of discretion. *State v. Martinez-Gonzalez*, 152 Idaho 775, 778, 275 P.3d 1, 4 (Ct. App. 2012); *State v. Dixon*, 140 Idaho 301, 304, 92 P.3d 551, 554 (Ct. App. 2004); *see* Idaho Criminal Rule 48(a). When a trial court's discretionary decision is reviewed on appeal, the Court determines whether the lower court: (1) correctly perceived the issue as one of discretion; (2) acted within the boundaries of such discretion and consistently with any legal standards applicable to the specific choices before it; and (3) reached its decision by an exercise of reason. *State v. Hedger*, 115 Idaho 598, 600, 768 P.2d 1331, 1333 (1989); *State v. Pole*, 139 Idaho 370, 372, 79 P.3d 729, 731 (Ct. App. 2003).

Below and on appeal, Eversole argues that the charges should have been dismissed because the truck was stuck on the berm and was therefore inoperable.[3] Idaho Code section 18-8004(1)(a) describes the offense of driving under the influence as follows:

> It is unlawful for any person who is under the influence of alcohol . . . to drive or be in *actual physical control* of a motor vehicle within this state, whether upon a highway, street or bridge, or upon public or private property open to the public.

---

[2]     *See North Carolina v. Alford*, 400 U.S. 25 (1970).

[3]     Because we conclude that the motion was properly denied on the merits, we need not determine whether the motion amounted to an impermissible motion for summary judgment in a criminal case. *See State v. Alley*, 155 Idaho 972, 981, 318 P.3d 962, 991 (2014).

(emphasis added). The statute further defines "actual physical control" to mean "being in the driver's position of the motor vehicle with the motor running or with the motor vehicle moving." I.C. § 18-8004(5). Interpreting this language, this Court has held:

> The "actual physical control" portion of the DUI statute presupposes the presence of a vehicle that can be controlled. The threat that is targeted by this part of the DUI statute is the danger that a parked vehicle will be put in motion by an intoxicated occupant and thereby pose a risk to the safety of the occupant and others. This targeted risk does not exist when the vehicle is not operable, nor subject to being readily made operable, nor in motion (whether by coasting or being pushed), nor at risk of coasting. If a vehicle cannot be moved it is not a motor vehicle capable of being "controlled," and the reason for the statutory prohibition does not exist. Consequently, the statute is not violated when the vehicle is not in motion or susceptible of easily being placed in motion.

*State v. Adams*, 142 Idaho 305, 308, 127 P.3d 208, 211 (Ct. App. 2005). Applying this rule, we held that "when there is evidence from which a fact-finder could sensibly conclude that the vehicle was reasonably capable of being rendered operable, the issue is for the jury." *Id*.

Relying on *Adams*, Eversole argues that his vehicle was neither "in motion [n]or susceptible of easily being placed in motion." We disagree. The district court correctly determined that the fact-finder could "sensibly conclude" that Eversole and his companions were capable of rendering the vehicle operational in a short period of time. A finder of fact could have credited the officer's testimony that the jack strategy could have worked if the jack was positioned "a little bit differently." Therefore, the issue should be decided by the trier of fact and the order denying dismissal was proper.

## B. The Warrantless Blood Draw Was Unconstitutional and Test Results Must Be Suppressed

Requiring a person to submit to a blood draw for evidentiary testing is a search and seizure under the Fourth Amendment to the United States Constitution and Article I, Section 17 of the Idaho Constitution. *Schmerber v. California*, 384 U.S. 757, 767 (1966); *State v. Wulff*, 157 Idaho 416, 418, 337 P.3d 575, 577 (2014). Therefore, warrantless forced blood draws are generally violative of the state and federal constitutions. *Missouri v. McNeely*, ___ U.S. ___, ___, 133 S. Ct. 1552, 1558 (2013); *Wulff*, 157 Idaho at 419, 337 P.3d at 578. However, the warrant requirement does not apply if the person subjected to the search has consented. *Schneckloth v. Bustamonte*, 412 U.S. 218, 222 (1973); *State v. Dominguez*, 137 Idaho 681, 683, 52 P.3d 325, 327 (Ct. App. 2002). Consent must be voluntary and not the result of duress or

coercion, either direct or implied. *Schneckloth*, 412 U.S. at 248; *State v. Whiteley*, 124 Idaho 261, 264, 858 P.2d 800, 803 (Ct. App. 1993). The voluntariness of an individual's consent is evaluated in light of all the circumstances. *United States v. Mendenhall*, 446 U.S. 544, 557 (1980); *Schneckloth*, 412 U.S. at 226-27; *State v. Hansen*, 138 Idaho 791, 796, 69 P.3d 1052, 1057 (2003); *Whiteley*, 124 Idaho at 264, 858 P.2d at 803. Mere acquiescence to a claim of authority by a law enforcement officer does not constitute consent. *Bumper v. North Carolina*, 391 U.S. 543, 549 (1968); *State v. Smith*, 144 Idaho 482, 488, 163 P.3d 1194, 1200 (2007); *State v. Tietsort*, 145 Idaho 112, 118, 175 P.3d 801, 807 (Ct. App. 2007). Whether consent was granted voluntarily, or was a product of coercion, is a question of fact to be determined by all the surrounding circumstances. *Hansen*, 138 Idaho at 796, 69 P.3d at 1057. The State bears the burden to prove consent by a preponderance of the evidence. *United States v. Matlock*, 415 U.S. 164, 177 n.14 (1974); *Hansen*, 138 Idaho at 796, 69 P.3d at 1057; *State v. Kilby*, 130 Idaho 747, 749, 947 P.2d 420, 422 (Ct. App. 1997).

Consent, once given, may also be revoked, for "[i]nherent in the requirement that consent be voluntary is the right of the person to withdraw that consent." *State v. Halseth*, 157 Idaho 643, 646, 339 P.3d 368, 371 (2014). Thus, after a defendant has revoked consent, officers no longer may act pursuant to that initial voluntary consent. *State v. Thorpe*, 141 Idaho 151, 154, 106 P.3d 477, 480 (Ct. App. 2004). Of course, an individual may renew his consent after revoking it. *Id.*

Below, both the State and the district court relied upon Idaho's implied consent statute, Idaho Code section 18-8002(1), which states that "any person who drives or is in actual physical control of a motor vehicle in this state shall be deemed to have given his consent to evidentiary testing for concentration of alcohol." At the time of the proceedings below, Idaho Supreme Court precedent held that this statutorily implied consent satisfied the consent exception to the constitutional warrant requirement. *State v. Diaz*, 144 Idaho 300, 303, 160 P.3d 739, 742 (2007), *overruled by Wulff*, 157 Idaho 416, 337 P.3d 575. Additionally, and in contravention of the general rule that consent may be withdrawn or revoked, our Supreme Court had held that actions or statements revoking implied consent were ineffective. *State v. Woolery*, 116 Idaho 368, 373, 775 P.2d 1210, 1215 (1989), *overruled by Wulff*, 157 Idaho 416, 337 P.3d 575. These points of law have recently changed, however. In a series of recent decisions, the Idaho Supreme Court reexamined its application of Idaho's implied consent statute in light of the United States

5

Supreme Court's decision in *McNeely*, _____ U.S. _____, 133 S. Ct. 1552. In *Wulff*, our Supreme Court concluded, "A holding that the consent implied by statute is irrevocable would be utterly inconsistent with the language in *McNeely* denouncing categorical rules that allow warrantless forced blood draws." *Wulff*, 157 Idaho at 422, 337 P.3d at 581. Accordingly, under current law, a defendant's refusal, protest, or objection to alcohol concentration testing terminates the implied consent:

> [A]n implied consent statute such as . . . Idaho's does not justify a warrantless blood draw from a driver who refuses to consent . . . or objects to the blood draw . . . . Inherent in the requirement that consent be voluntary is the right of the person to withdraw that consent.

*Halseth*, 157 Idaho at 646, 339 P.3d at 371. *See also State v. Arrotta*, 157 Idaho 773, 774, 339 P.3d 1177, 1178 (2014) ("A suspect can withdraw his or her statutorily implied consent to a test for the presence of alcohol.").

In this case, Eversole refused to participate in a breath test for alcohol concentration. He thereby withdrew any implied consent created by I.C. § 18-8002(1). After this refusal of the breath test, he was taken to a hospital where a blood sample was drawn for alcohol testing. Because Eversole's implied consent already had been revoked, the consent exception to the warrant requirement was inapplicable unless the State proved some subsequent action or statement by Eversole renewing his consent. The State did not do so. The stipulated facts include no information regarding Eversole's reaction to the officer's demand for a blood draw. Even if Eversole did not specifically object to the blood draw, that absence of a second objection would be immaterial, for by refusing to submit to a breath test he had already withdrawn the statutorily implied consent. Under the rule announced in *Halseth*, and elaborated in *Wulff* and *Arrotta*, this withdrawal was effective and terminated the operation of the "implied consent" imposed by statute. As the State presented no evidence of consent to the blood draw, that blood draw was an impermissible warrantless search, and the test results must be suppressed.

Accordingly, the judgment of conviction is vacated and this case is remanded for further proceedings consistent with this opinion.

Chief Judge MELANSON **CONCURS.**

6

Judge GRATTON, **CONCURRING IN PART AND DISSENTING IN PART**.

I concur with the Court's conclusion regarding the motion to dismiss; however, I disagree with the Court's conclusion regarding the motion to suppress. Specifically, I disagree with the Court's finding, whether factual or as a matter of law, that Eversole's refusal to take the breath test was a withdrawal of his implied consent for all purposes including other evidentiary testing.

The motion to suppress in this case was submitted on a stipulation of facts regarding defendant's motion to suppress. In that stipulation, it is agreed that:

> 3. At the time of his arrest, the Defendant *refused to provide a breath sample* for the purpose of determining the Defendant's blood alcohol content.
> 4. Upon the Defendant's *refusal to provide a breath sample*, Deputy Morgan transported the Defendant to Bingham Memorial Hospital where Tiffany Henderson, a technician in the lab, drew his blood pursuant to Deputy Morgan's request.

(Emphasis added.) The district court recited the statements in the stipulation verbatim as its findings of fact. The district court made no further findings regarding Eversole's refusal.[1]

Most assuredly, Eversole refused or objected and thereby withdrew his implied consent to evidentiary *breath* testing. There is absolutely nothing in the stipulated facts, submitted and relied upon for the motion to suppress, which expressly relates to any objection, refusal, or withdrawal of implied consent by Eversole to submit to an evidentiary *blood* test. The record is completely devoid of any mention of protest to the blood test. One simply cannot read the stipulated facts to expressly include a refusal or withdrawal of implied consent to the blood test. Therefore, to the extent the Court is holding that the stipulated evidence of "refusal to provide a breath sample" is, as a matter of fact, also a refusal to submit to any further evidentiary testing, including blood testing, I cannot agree.

Similarly, I cannot agree with the Court to the extent it is implying a refusal of blood testing from the refusal of breath testing. Certainly, most people would rather submit to the less intrusive breath test than a blood test. But, the refusal of a breath test does not support an implication that the person is also refusing a blood test, even though it is a more intrusive procedure. Any number of valid reasons exists for refusing a breath test but not a blood test. The blood test is more accurate (which could be exculpatory). An individual may know of, or be

---

[1] Indeed, there is nothing to the contrary in the record. In the officer's affidavit of probable cause, the officer reported that "[Eversole] stated he understood the form and would not consent to the breath test."

embarrassed by, a medical condition that would make the breath test difficult or impossible. *See Helfrich v. State*, 131 Idaho 349, 351, 955 P.2d 1128, 1130 (Ct. App. 1998) ("Helfrich sufficiently articulated a physical inability to complete the [breath test] so as to put the officer on notice that a different test should be utilized."). An individual may have had a prior experience with difficulties in performing breath testing. Whatever the potential reason, refusal of one test does not imply refusal of another.[2] Again, to the extent the Court is implying a refusal or withdrawal of implied consent to a blood test from refusal of a breath test, I cannot agree.

So, without an express or implied factual basis for finding withdrawal of implied consent by Eversole to blood testing, it seems apparent that the Court is holding that his refusal of the breath test operates, as a matter of law, as a refusal and withdrawal of consent to any and all evidentiary testing. Indeed, the Court states: "In this case, Eversole refused to participate in a breath test for alcohol concentration. He thereby withdrew any implied consent created by I.C. § 18-8002(1)." On what basis this determination is made I cannot discern. The Court provides no analysis of what is required to withdraw all consent or, on a textual or policy basis, how refusal of the breath test operates to withdraw all implied consent.

In *State v. Arrotta*, 157 Idaho 773, 774, 339 P.3d 1177, 1178 (2014), the Court held that: "A suspect can withdraw his or her statutorily implied consent *to a test* for the presence of alcohol." (Emphasis added.) That is exactly what happened here; under the stipulated facts, Eversole withdrew his implied consent to "a test," namely, a breath test. In *State v. Halseth*, 157 Idaho 643, 339 P.3d 368 (2014), the Idaho Supreme Court held that the implied consent statute does not justify a warrantless blood draw from a driver who objects to the blood draw and that "by objecting to the blood draw, Defendant withdrew his implied consent." *Id*. at 646, 339 P.3d at 371. Halseth protested the blood draw, stating: "You can't take my blood! I refused! How can you just take it without my permission?" *Id*. at 644, 339 P.3d at 369. Under present law, a driver may certainly withdraw his or her consent to an evidentiary test. I find no support for the conclusion that refusal as to one specific test is a withdrawal of statutorily implied consent to any evidentiary testing. In *Helfrich*, 131 Idaho at 351, 955 P.2d at 1130, we stated that "nothing in Helfrich's behavior suggested to the officer that she would refuse to

---

[2]     Consider the opposite situation; the individual was first offered and refused blood testing and then was given a breath test, as to which there was no apparent protest. Would the Court, by implication, deem the refusal of the blood test to be a refusal of the less intrusive breath test?

8

submit to a different type of alcohol concentration test." If Helfrich's initial refusal operated to withdraw all implied consent, she would not need to "refuse to submit to a different type of alcohol concentration test." *Id.*

In *Mills v. Swanson*, 93 Idaho 279, 280, 460 P.2d 704, 705 (1969), the Supreme Court addressed whether a driver's silence when requested to submit to chemical testing of the blood constituted a refusal for purposes of an administrative license suspension. In that case, the Court determined that where the driver had been in an accident, was bleeding, had lost numerous teeth, had sustained head injuries, a fracture of the periosteum, and was conscious but dazed, silence in response to a request for testing did not constitute a refusal for purposes of license suspension. *Id.* at 279-81, 460 P.2d at 704-06. The Court framed the question as whether the driver's silence in response to the request for a chemical test of the blood constituted "a withdrawal of the statutorily granted consent to such test." *Id.* at 280, 460 P.2d at 705. The Court analyzed what constitutes a refusal and withdrawal of consent.

> This court in the case of *State v. Bock*, 80 Idaho 296, 308, 328 P.2d 1065, 1072 (1958), said:
>> By operating a motor vehicle in this state the defendant is "deemed to have given his consent to a chemical test". The only way he can withdraw that consent is to expressly refuse the test. So under our law if he neither refuses nor consents, expressly, the test may be made.
>
> In the case at bar, the respondent did not at any time expressly refuse to take the test. Expressly means in direct or unmistakable terms. Webster's Third New International Dictionary (Unabridged); Black's Law Dictionary 692 (Revised 4 ed. 1968). Expressly means declared and not merely left to implication. *Magone v. Heller*, 150 U.S. 70, 14 S.Ct. 18, 37 L.Ed. 1001 (1883); *City & County of San Francisco v. Western Airlines Inc.*, 204 Cal.App.2d 105, 22 Cal.Rptr. 216 (1962).

*Mills*, 93 Idaho at 280, 460 P.2d at 705. The *Mills* Court concluded that where an individual has neither refused nor consented, it cannot be said that there was an express refusal to take the test. *Id.*[3] This holding is consistent with the recent Supreme Court decision in *Halseth*, 157 Idaho at 646, 339 P.3d at 371 (requiring that the driver either consent or object). Since a refusal and withdrawal of implied consent must be express and may not be "merely left to implication,"

---

[3] Note that both the *Mills* and *Bock* Courts repeatedly reference refusal the take "the test." In my view, these cases support the proposition that refusal must be test specific (or a clear and express refusal as to all evidentiary testing).

*Mills*, 93 Idaho at 280, 460 P.2d at 705, I cannot agree that, under the stipulated facts in this case, Eversole expressly refused or withdrew his implied consent to evidentiary blood testing.