IN THE SUPREME COURT OF THE STATE OF IDAHO
Docket No. 41924-2014

| | | |
|---|---|---|
| STATE OF IDAHO, | ) | |
| | ) | **Coeur d'Alene, April 2015 Term** |
| Plaintiff-Respondent, | ) | |
| | ) | **2015 Opinion No. 80** |
| v. | ) | |
| | ) | **Filed: August 20, 2015** |
| FELICITY KATHLEEN HAYNES, | ) | |
| | ) | **Stephen W. Kenyon, Clerk** |
| Defendant-Appellant. | ) | |
| | ) | |

Appeal from the District Court of the First Judicial District of the State of Idaho, in and for Kootenai County. Hon. Rich Christensen, District Judge, and Hon. Scott L. Wayman, Magistrate Judge.

The order of the district court is affirmed.

Jay W. Logsdon, Kootenai County public defender, Coeur d'Alene, argued for appellant.

Lori Fleming, Deputy Attorney General, Boise, argued for respondent.

_____

EISMANN, Justice.

This is an appeal out of Kootenai County from an order of the district court affirming on appeal the orders of the magistrate court in a prosecution for driving under the influence of alcohol. The challenged orders were: (a) the granting of a continuance to the State due to the unavailability of a witness; (b) the refusal to appoint a separate judge to hear a request for funds for the defense; (c) the denial of a motion in limine to exclude the results of a breath test on the ground that procedures for administering the test had not been properly adopted by the Idaho State Police; and (d) the defendant's consent to the breath test was invalid because it was obtained by the threat of a monetary penalty and loss of her driver's license for one year. We affirm the order of the district court.

# I.
## Factual Background.

On February 23, 2013, at about 2:00 a.m., Felicity K. Haynes was arrested by a state trooper for driving while under the influence of alcohol. The trooper placed her in the back seat of his patrol car, where he intended to have her submit to an evidentiary test for concentration of alcohol in her breath by using a hand-held Lifeloc breath testing device. Prior to asking her to do so, the officer played an audio recording that informed her of the consequences of refusing to submit to the test, as required by Idaho Code section 18-8002(3). Those consequences included that she would be subject to a civil penalty of $250 and would have her driver's license absolutely suspended for a period of one year. After playing the recording, the trooper asked Ms. Haynes to submit to the breath test, and she did so. The testing of two breath samples showed an alcohol concentration of 0.161 and 0.158, both of which exceeded the statutory limit of 0.08. Based upon those results, she was charged with the offense of driving while under the influence of alcohol.

On March 9, 2013, defense counsel filed a motion asking the magistrate court to suppress the results of the breath test on the ground that the Idaho State Police had not adopted rules pursuant to the Idaho Administrative Procedures Act establishing procedures for the maintenance and operation of breath testing devices, but had instead done so merely by issuing written standard operating procedures. In the motion, he requested oral argument but did not specify a date for the argument. Defense counsel filed an amended motion in limine on April 15, 2013, but the amended motion in limine did not give notice of a hearing date. It requested oral argument and an opportunity to present evidence. On April 16, 2013, defense counsel filed a motion to suppress in which he contended that the trooper's warrantless stop and arrest of Ms. Haynes were unconstitutional. In that motion, he requested that the motion be set for oral argument and/or an evidentiary hearing.

On April 17, 2013, the magistrate court held a pretrial conference. During the conference, defense counsel requested a continuance of the trial, and Ms. Haynes stated on the record that she waived her right to a speedy trial. The court granted the continuance.

On May 30, 2013, defense counsel filed an amended memorandum in support of the motion to suppress the results of the breath test. In that memorandum, he raised the issue that Ms. Haynes's consent to the breath test was invalid.

2

On June 4, 2013, the magistrate court held a pretrial conference, during which the amended motion in limine and the motion to suppress were to be heard. At the commencement of the hearing, the prosecutor asked for a continuance of the motion to suppress because the state trooper "has a child uh, issue as far as having to be with the—babysitting a child this morning." The prosecutor also stated that defense counsel had just filed the amended memorandum raising the issue of whether her consent to the breath test was invalid, that he had been out of state, and that he had only returned the previous day. Defense counsel objected to the continuance, stating, "We think that it would impune [sic] the neutrality of the court to give them a continuance on the basis of something that the officer is claiming last second." Defense counsel said that the state trooper was necessary to testify regarding the recently raised issue of the validity of Ms. Haynes's consent to perform the breath test and that he would not object to continuing that motion, but he objected to continuing the motion to suppress. Defense counsel also stated, "We don't think that the State has provided any lawful reason for their witness not being here." Defense counsel did not assert that his client would be prejudiced by the continuance. The magistrate court granted the motion for a continuance. On June 5, 2013, defense counsel filed a motion seeking an appointment of another magistrate judge to hear an ex parte application for funds to assist the defense.

The defense motions were heard on July 18, 2013. The motion for appointment of another judge to hear an ex parte motion for additional funds was argued first, and at the conclusion of the argument the magistrate court announced that it denied the motion.

The motion to suppress based upon the alleged illegality of the stop was heard next. The prosecutor called the state trooper who testified to the reason for stopping the vehicle that Ms. Haynes was driving. The court found the trooper to be credible and ruled that "the State has met their [sic] burden of proof of establishing a reasonable and articulable suspicion that the vehicle was being driven in violation of the traffic laws and was legitimately stopped."

Prior to the hearing, the defense stipulated that the state trooper had the required reasonable suspicion to request that Ms. Haynes submit to a test for alcohol concentration, that he gave her the required information before doing so, and that she "consented to the breath test." The court ruled that her consent was not involuntary.

3

Finally, defense counsel did not present any oral argument on the amended motion in limine, but chose to rely upon the briefs he had filed. The magistrate court orally denied the motion.

On July 22, 2013, Ms. Haynes pled guilty to the charge of driving while under the influence of alcohol. Pursuant to Rule 11(a)(2) of the Idaho Criminal Rules, the prosecutor, the defense counsel, and Ms. Haynes agreed that the plea was conditional; that she reserved the right to appeal the orders of June 4, 2013, and July 18, 2013; and that if she prevailed on appeal she would withdraw her guilty plea. The magistrate court accepted the plea agreement and sentenced Ms. Haynes. She then appealed to the district court. After briefing and argument, the district court affirmed the magistrate court's rulings. Ms. Haynes then appealed to this Court.

## II.
### Did the District Court Err in Holding that the Magistrate Court Did Not Abuse Its Discretion in Granting a Continuance of the Hearing on the Motion to Suppress?

"The decision to grant or deny a motion for continuance is within the discretion of the judge." *State v. Payne*, 146 Idaho 548, 567, 199 P.3d 123, 142 (2008). "In addition, the denial of a motion for continuance will not be an abuse of discretion unless it can be shown that the substantial rights of the defendant have been prejudiced." *State v. Wood*, 132 Idaho 88, 106, 967 P.2d 702, 720 (1998); accord I.C.R 52.

The only issues that the defense raised before the magistrate court regarding the granting of the continuance was that granting the continuance "would impune [sic] the neutrality of the court to give them a continuance on the basis of something that the officer is claiming last second" and that the prosecutor had not "provided any lawful reason for their witness not being here." The defense did not contend that the continuance would prejudice Ms. Haynes. In holding that the magistrate court did not abuse its discretion in granting the continuance, the district court stated that Ms. Haynes did not suffer any prejudice by the continuance.

On appeal to this Court, Ms. Haynes seeks to raise other issues that were not presented to the magistrate court. "It is well settled that an issue not raised before the trial court cannot be raised for the first time on appeal." *State v. Howard*, 150 Idaho 471, 476, 248 P.3d 722, 727 (2011). Because no prejudice was shown before the magistrate court, the district court did not err in upholding the granting of the motion for a continuance.

4

**III.**

**Did the District Court Err in Upholding the Magistrate Court's Denial of the Request for the Appointment of Another Judge to Hear an Ex Parte Motion for Additional Funds?**

Idaho Criminal Rule 12.2(b) provides that a defendant's motion seeking public funds to pay for investigative, expert, or other services that the defense believes to be necessary, shall include:

(1) The scope and details of the services requested.
(2) The reasons the requested services are relevant and necessary to the defense based upon the specific facts of the case.
(3) The name and location of the proposed providers of the services.
(4) The qualifications of the proposed providers of the services.
(5) An estimate of the total cost of the services being requested, including the hourly rate or other charges of the providers of the services, and any additional expenses, such as travel costs, that will be incurred.
(6) If the proposed providers of the services are located outside of the judicial district or the state of Idaho, an explanation of why the proposed providers should be utilized and what efforts have been made to locate providers of the requested services in the judicial district or in the state of Idaho.

The rule also provides that if the defendant is represented by a public defender, as in this case, the motion shall be submitted to the court ex parte and the court shall decide the motion based upon the information provided by the defendant and the court record. I.C.R. 12.2(d). The rule further provides that the court may, in its discretion, ask the administrative district judge to appoint another judge to decide the motion. I.C.R. 12.2(e).

The defense did not comply with Rule 12.2(b) in making its motion in that it did not provide any of the information required by that rule. Rather, the defense merely asked the magistrate court "to appoint a magistrate judge to hear Defendant's ex parte applications for funds to assist in the preparation of the defense." The magistrate court denied the motion to appoint another judge because the defense did not make a sufficient showing to require such appointment; the defense did not show what the expert would do or how much the expert would cost; the defense did not show that making an ex parte showing to the magistrate court would require disclosure of the defense strategy or theories; and the defense did not show that the public defender's office had not received sums for experts as part of its budget request. The district court held that the magistrate court did not abuse its discretion in denying the request for appointment of another judge to hear the request for additional funds.

5

On appeal to this Court, Ms. Haynes contends that the Due Process Clause requires the granting of a motion to appoint another judge to hear a motion for additional funds without any preliminary showing. That argument was not made to the magistrate court. Therefore, we will not consider it on appeal. "It is well settled that an issue not raised before the trial court cannot be raised for the first time on appeal." *Howard*, 150 Idaho at 476, 248 P.3d at 727.

**IV.**
**Did the District Court Err in Upholding the Magistrate Court's Denial of the Motion in Limine?**

The defense asked the magistrate court to exclude from evidence the results of the breath test on the ground that the Idaho State Police had failed to create procedures that would establish the reliability of breath testing. The State Police had adopted administrative rules setting forth requirements for breath alcohol testing. Those rules were as follows:

> **014.    REQUIREMENTS FOR PERFORMING BREATH ALCOHOL TESTING.**
>
> **01.    Instruments**. Each breath testing instrument model shall be approved by the department and shall be listed in the "Conforming Products List of Evidential Breath Measurement Devices" published in the Federal Register by the United States Department of Transportation as incorporated by reference in Section 004 of this rule.                                                           (4-7-11)
>
> **02.    Report**. Each direct breath testing instrument shall report alcohol concentration as grams of alcohol per two hundred ten (210) liters of breath. (7-1-93)
>
> **03.    Administration**. Breath tests shall be administered in conformity with standards established by the department. Standards shall be developed for each type of breath testing instrument used in Idaho, and such standards shall be issued in the form of analytical methods and standard operating procedures. (4-7-11)
>
> **04.    Training**. Each individual operator shall demonstrate that he has sufficient training to operate the instrument correctly. This shall be accomplished by successfully completing a training course approved by the department. Officers must retrain periodically as required by the department.           (7-1-93)
>
> **05.    Checks**. Each breath testing instrument shall be checked on a schedule established by the Department for accuracy with a simulator solution

6

provided by or approved by the department. These checks shall be performed according to a procedure established by the department. (4-7-11)

**06.**    **Records**. All records regarding maintenance and results shall be retained for three (3) years. (3-19-99)

**07.**    **Deficiencies**. Failure to meet any of the conditions listed in Sections 013 and 014. Any laboratory or breath testing instrument may be disapproved for failure to meet one (1) or more of the requirements listed in Sections 013 and 014, and approval may be withheld until the deficiency is corrected. (4-7-11)

IDAPA 11.03.01.14 (2013).

Pursuant to the rules, breath tests are to be administered in conformity with standards "issued in the form of analytical methods and standard operating procedures." IDAPA 11.03.01.14.03 (2013). Ms. Haynes contended that two changes in the standard operating procedures (SOPs) would result in unreliable breath testing results. The SOPs that are relevant to her argument are: Idaho State Police, Standard Operating Procedure Breath Alcohol Testing (Jan. 15, 2009) ("2009 SOPs"), and Idaho State Police, 6.0 Idaho Standard Operating Procedure Breath Alcohol Testing (January 16, 2013) ("2013 SOPs").

The first change she mentioned was changing the word "must" in section 2.2.11 of the 2009 SOPs to "should" in section 5.2.10 in the 2013 SOPs. The 2009 SOPs stated, "The BTS [breath testing specialists] *must* set the correct acceptable range limits and reference solution lot number in the instrument before proceeding with subject testing." 2009 SOPs, § 2.2.11 (emphasis added). The corresponding provision of the 2013 SOPs stated, "The correct acceptable range limits and performance verification standard lot number *should* be set in the instrument before proceeding with evidentiary testing." 2013 SOPs, § 5.2.10 (emphasis added). Ms. Haynes contends that the change from "must" in 2009 to "should" in 2013 rendered the procedure incapable of producing an accurate breath test.

Section 2.2.11 in the 2009 SOPs and section 5.2.10 in the 2013 SOPs were applicable to performing calibration checks on Intoxilyzer 5000/EN instruments. The instrument used to test Ms. Haynes's breath was a Lifeloc FC20, which has a different procedure for performing calibration checks. 2009 SOPs § 2.1, 2013 SOPs § 5.1. Ms. Haynes has not shown how the change in the procedures for performing a calibration check on Intoxilyzer 5000/EN instruments

would affect the reliability of the results of a breath test performed using a Lifeloc FC20 instrument.

The second change mentioned by Ms. Haynes related to the monitoring of the subject prior to performing the breath test. The relevant provisions of the 2009 SOPs stated:

> 3.1 Prior to evidential breath alcohol testing, the subject *must* be monitored for fifteen (15) minutes.
> . . . .
> 3.1.5 During the monitoring period, the operator *must* be alert for any event that might influence the accuracy of the breath test.
> 3.1.5.1 The operator *must* be aware of the possible presence of mouth alcohol as indicated by the testing instrument. If mouth alcohol is suspected or indicated, the operator should begin another l5-minute waiting period before repeating the testing sequence.
> 3.1.5.2 If, during the 15-minute waiting period, the subject vomits or is otherwise suspected of regurgitating material from the stomach, the 15-minute waiting period *must* begin again.

2009 SOPs §§ 3.1, 3.1.5, 3.1.5.1, 3.1.5.2 (emphases added).

The corresponding provisions in the 2013 SOPs changed the word "must" to "should," as shown below:

> 6.1 Prior to evidentiary breath alcohol testing, the subject/individual *should* be monitored for at least fifteen (15) minutes. Any foreign objects/materials which have the potential to enter the instrument/breath tube or may present a choking hazard should be removed prior to the start of the 15 minute waiting period. During the monitoring period the subject/individual should not be allowed to smoke, drink, eat, or belch/vomit/regurgitate.
> . . . .
> 6.1.4 During the monitoring period, the Operator *should* be alert for any event that might influence the accuracy of the breath alcohol test.
> 6.1.4.1 The Operator *should* be aware of the possible presence of mouth alcohol as indicated by the testing instrument. If mouth alcohol is suspected or indicated, the Operator should begin another 15-minute waiting period before repeating the testing sequence.
> 6.1.4.2 If during the 15-minute waiting period, the subject/individual vomits or regurgitates material from the stomach into the subject/individual's breath pathway, the 15-minute waiting period *should* begin again.

2013 SOPs, §§ 6.1, 6.1.4, 6.1.4.1, 6.1.4.2 (emphases added).

In the motion in limine, Ms. Haynes had the burden of establishing that the State could not lay a sufficient foundation for the admission of the test results. *Todd v. Sullivan Constr. LLC*, 146 Idaho 118, 121, 191 P.3d 196, 199 (2008). In support of her motion in limine, Ms.

Haynes did not offer any evidence as to how the state trooper conducted the breath test or whether the testing instrument was properly calibrated. Therefore, she failed to show that the State could not lay a sufficient foundation for the admissibility of the test results.

"When presented with a motion in limine, a trial court has the authority to deny the motion and wait until trial to determine if the evidence should or should not be excluded." *Kirk v. Ford Motor Co.*, 141 Idaho 697, 701, 116 P.3d 27, 31 (2005). The magistrate court denied the motion in limine, but stated, "The evidence that comes in at the trial is still gonna have to establish that it is an accurate test." Because Ms. Haynes pled guilty before the magistrate court made any ruling regarding the admissibility of the test, she did not preserve that issue for appeal. *State v. Manzanares*, 152 Idaho 410, 420, 272 P.3d 382, 392 (2012).

Ms. Haynes also argues on appeal that the 2013 SOPs are void because they were not adopted pursuant to the Administrative Procedure Act. That issue was raised in *State v. Besaw*, 155 Idaho 134, 306 P.3d 219 (Ct. App. 2013). The magistrate court quoted the following from that opinion, "Although Besaw has exposed some troubling information about the manner in which the SOPs for breath testing have been developed or amended, we are not persuaded that he has demonstrated that the SOP procedures are incapable of yielding accurate tests." *Id*. at 144, 306 P.3d at 229. The magistrate then held:

> And so I'm going to deny the motion in limine based on the changing in this—of the rules or the adoption of the standard operating procedures. The evidence that comes in at the trial is still gonna have to establish that it is an accurate test. And the evidence that comes in at trial, assuming the test comes in, is not necessarily uh—well, it is still subject to challenge as far as the accuracy is concerned.

The district court affirmed, again based upon the decision in *Besaw*.

The State argues on appeal that the State Police is not required to adopt rules pursuant to Idaho Code section 67-5231(1), which states, "Rules may be promulgated by an agency only when specifically authorized by statute." The State contends that Idaho Code section 18-8004 does not expressly authorize the State Police to promulgate rules regarding evidentiary testing.

Idaho Code section 67-2901(1) states that the State Police is an executive department of the State government. The director of the State Police has the authority for the State Police to "[f]ormulate and place in effect such rules for the Idaho state police as from time to time appear to him advisable." I.C. § 67-2901(12)(c). The State Police rules governing alcohol testing

9

stated, "The Director of the Idaho State Police has general rulemaking authority to prescribe rules and regulations for alcohol testing, pursuant to Section 67-2901, Idaho Code." IDAPA 11.03.01.000 (2013).

"[E]ach state . . . department or officer authorized by law to make rules" is an "agency" under the Administrative Procedure Act. I.C. § 67-5201(2).

Idaho Code section 18-8004(4) states:

> Analysis of blood, urine or breath for the purpose of determining the alcohol concentration shall be performed by a laboratory operated by the Idaho state police or by a laboratory approved by the Idaho state police under the provisions of approval and certification standards to be set by that department, or by any other method approved by the Idaho state police. . . . .

The statute requires that analysis of blood or urine "shall be performed by a laboratory operated by the Idaho state police or by a laboratory approved by the Idaho state police under the provisions of approval and certification standards to be set by that department." A "laboratory" is defined as "the place at which specialized devices, instruments and methods are used by trained personnel to measure the concentration of alcohol in samples of blood or urine for law enforcement purposes." IDAPA 11.03.01.010.05 (2013). Thus, it is mandatory that the State Police establish approval and certification standards for those laboratories.

A "rule" under the Administrative Procedure Act is "the whole or a part of an agency statement of general applicability that has been promulgated in compliance with the provisions of this chapter and that implements, interprets, or prescribes: (a) Law or policy; or (b) The procedure or practice requirements of an agency." I.C. § 67-5201(19). The approval and certification standards would constitute a rule under the Act. If they are not adopted in compliance with the Act, they are "voidable unless adopted in substantial compliance with the requirements of this chapter," I.C. § 67-5231(1).

With respect to breath testing, Idaho Code section 18-8004(4) provides that "[a]nalysis of . . . breath for the purpose of determining the alcohol concentration shall be performed . . . by any other method approved by the Idaho state police." The "any other method" would be a method other than in a laboratory operated or approved by the State Police. The 2013 SOPs set forth procedures to implement breath testing under section 18-8004(4). In *Asarco Inc. v. State*, 138 Idaho 719, 69 P.3d 139 (2003), we further clarified what constitutes a rule under the Administrative Procedure Act.

10

> [I]n order to provide further guidance in determining when agency action requires rulemaking, this Court adopts the reasoning of the district court and considers the following characteristics of agency action indicative of a rule: (1) wide coverage, (2) applied generally and uniformly, (3) operates only in future cases, (4) prescribes a legal standard or directive not otherwise provided by the enabling statute, (5) expresses agency policy not previously expressed, and (6) is an interpretation of law or general policy.

*Id*. at 723, 69 P.3 at 143.

Under *Asarco*, the 2013 SOPs would constitute rules. They have wide coverage, governing the testing for breath alcohol concentration throughout the state. They are to be applied generally and uniformly, which is the purpose for adopting standards and procedures. They operate only in future cases. They prescribe a legal standard not provided by the enabling legislation. Idaho Code section 18-8004(4) did not set forth any standards relating to testing for alcohol concentration other than the formulas to be used for testing the alcohol concentration in blood, urine, and breath. Although the 2013 SOPs do not express agency policy not previously expressed, they express agency policy not previously set forth in rules adopted pursuant to the Administrative Procedure Act. The SOPs are not an interpretation of law or general policy, but the absence of that characteristic is not determinative. Therefore, they constitute rules which must be adopted in substantial compliance with the Act. I.C. § 67-5231(1). The State does not contend that the 2013 SOPs were adopted in substantial compliance with the Act. Therefore, they are void.

However, "[s]howing that the test was administered in conformity with applicable test procedures or expert testimony may suffice to establish an adequate foundation." *Dachlet v. State*, 136 Idaho 752, 757, 40 P.3d 110, 115 (2002). Therefore, the fact that the 2013 SOPs are void would not have prevented the State from establishing an adequate foundation for the admissibility of the test results. As stated above, the magistrate court ruled that the State would have to establish that the test was accurate. That could be done by expert testimony. Because Ms. Haynes pled guilty prior to trial, the magistrate court never had to determine whether the State could present sufficient evidence to establish that foundation. The district court did not err in holding that the magistrate did not err in denying the motion in limine.

11

## V.
**Did the District Court Err in Affirming the Magistrate Court's Ruling that Ms. Haynes Consented to the Breath Test?**

If Ms. Haynes had refused to consent to the breath test, she would have been subject to a civil penalty of $250 and a one-year loss of her driving privileges. I.C. § 18-8002(4). After being advised of that consequence, she consented to the test. She contended in the magistrate court that the threat of this consequence vitiated her consent. The magistrate disagreed, and the district court upheld that ruling. We affirm on a different ground.

The Fourth Amendment to the Constitution of the United States recognizes "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend IV. The Constitution of the State of Idaho similarly protects "[t]he right of the people to be secure in their persons, houses, papers and effects against unreasonable searches and seizures." Idaho Const. art. I, § 17. Both provisions only protect against *unreasonable* searches; they do not prohibit reasonable searches. Thus, the issue is whether a request by a peace officer that a person submit to a breath test constitutes an unreasonable search where the officer had reasonable grounds to believe that the person was operating or in actual control of a motor vehicle while under the influence of alcohol. We hold that it does not.

First, the person has a diminished expectation of privacy because the person has already consented to the search. By operating or being in actual physical control of a motor vehicle, the person has given consent to evidentiary testing of alcohol concentration based upon the analysis of the person's breath, blood, or urine if such testing is administered by a peace officer having reasonable grounds to believe that the person is under the influence of alcohol, drugs, or other intoxicating substances. I.C. § 18-8002(1). Although the person can later withdraw that consent, *State v. Halseth*, 157 Idaho 643, 646, 339 P.3d 368, 371 (2014), the implied consent is relevant to the expectation of privacy.

Second, the intrusion is minimal. The breath test only requires that the person blow air into a machine or other device for the purpose of measuring the alcohol concentration in the person's exhaled breath. The breath test is not invasive, and there is no contention that it could put the person at risk of injury. The person is not required to undress or expose any portion of his or her body that is normally covered. The test is only intended to determine alcohol

12

concentration in the person's breath, not to determine the state of the person's body or the person's possible medical conditions. Thus, it would not reveal confidential medical information.

Third, the state has a compelling interest in deterring intoxicated persons from operating motor vehicles on the roads and highways of this state. "The carnage caused by drunk drivers is well documented . . . ." *South Dakota v. Neville*, 459 U.S. 553, 558 (1983).

Finally, the breath test cannot be completed by the use of force. It can only be completed if the person blows into the testing instrument.

For the above reasons, we hold that requiring a breath test in this circumstance was not an unreasonable search. Because consent is an exception to the warrant requirement, *Halen v. State*, 136 Idaho 829, 833, 41 P.3d 257, 261 (2002), it does not apply where the search was reasonable and a warrant was therefore not required.

## VI.
### Conclusion.

We affirm the order of the district court.


Chief Justice J. JONES, Justices BURDICK and HORTON **CONCUR.**


W. JONES, Justice, concurring,

The majority holds herein that the administration of the breath test did not violate Ms. Haynes' rights because the Idaho Constitution only protects against *unreasonable* searches and breath tests are *reasonable*. I feel that such a ruling improperly abrogates the warrant requirement in lieu of a general reasonableness standard. The proper approach to this issue is to look to whether a previously established exception to the warrant requirement properly applies (in this case consent). Indeed, while a reasonableness analysis is necessary in this case to determine the constitutionality of the administrative penalty scheme, such analysis should take place within the greater context of the consent exception to the warrant requirement. For the reasons outlined below, the consent exception to the warrant requirement is applicable and Haynes' consent was voluntary.

13

Idaho Code section 18-8002 provides that a person gives "implied consent" to evidentiary testing when that person drives on Idaho roads and that these tests can be administered when a police officer has "reasonable grounds to believe that [a] person has been driving or in actual physical control of a motor vehicle in violation of [Idaho's DUI statute]." I.C. § 18-8002(1). This statutorily implied consent to evidentiary testing includes consent to breathalyzer tests and blood tests. I.C. § 18-8002(9)–(10). In the blood draw context, this Court has already held that warrantless searches for the presence of alcohol cannot, as a matter of course, be justified by implied consent. *See State v. Arrotta*, 157 Idaho 773, ___, 339 P.3d 1177, 1178 (2014); *State v. Halseth*, 157 Idaho 643, ___, 339 P.3d 368, 371 (2014); *State v. Wulff*, 157 Idaho 416, ___, 337 P.3d 575, 582 (2014). While *McNeely* centered on the exigency exception to the warrant requirement and did not squarely address implied consent, based on *McNeely's* rationale, dicta, and progeny, the Court determined that implied consent cannot act as a *per se* exception to the warrant requirement. *Wulff*, 157 Idaho at ___, 337 P.3d at 581 ("[I]rrevocable implied consent operates as a *per se* rule that cannot fit under the consent exception because it does not always analyze the voluntariness of that consent."). For this reason, "this Court has held that a suspect can withdraw his or her statutorily implied consent to a test for the presence of alcohol." *Arrotta*, 157 Idaho at 774, 339 P.3d at 1178. Although these cases were decided in the blood draw context, the impact of these holdings on Idaho's implied consent statute applies equally in the breath test context.

The opinions in *Wulff*, *Halseth*, and *Arrotta* were released shortly after the briefing for this appeal was submitted. These cases, which establish that statutorily implied consent must be capable of being withdrawn, dispense with one of the grounds heavily relied upon by the State in arguing for the constitutionality of ISP's warrantless breath search of Haynes. These cases also nullify Haynes's argument that *McNeely* invalidated Idaho's implied consent statute. For this reason, the bifurcated approach adopted in the briefing, wherein the parties analyze statutorily implied consent separately from actual consent, is antiquated because this distinction, at least as briefed with no recognition of the ability to withdraw that consent, is no longer viable. Because implied consent is capable of being revoked, a party's actual consent becomes relevant and implied consent is just one of many factors to be considered or folded into the larger consent analysis, a totality of the circumstances inquiry.

Given these recent developments, the issue presented in this appeal is whether Haynes's consent to the breath alcohol test was truly voluntary. This inquiry requires this Court to determine whether the administrative penalty scheme laid out in Idaho Code sections 18-8002 and 18-8002A is constitutional.

"The Fourth Amendment of the U.S. Constitution and article I, section 17 of the Idaho Constitution each forbid unreasonable searches and seizures." *State v. Hansen*, 151 Idaho 342, 346, 256 P.3d 750, 754 (2011); U.S. CONST. amend. IV; IDAHO CONST. art. I, § 17. The United States Supreme Court has recognized that the Fourth Amendment applies to a breathalyzer test. *Maryland v. King*, ___ U.S. ___, 133 S. Ct. 1958, 1969 (2013); *Skinner v. Ry. Labor Execs.' Ass'n*, 489 U.S. 602, 616, 109 S. Ct. 1402, 1414 (1989). For a search to be reasonable, a warrant is presumptively required unless one of several judicially recognized exceptions to the warrant requirement applies. *Hansen*, 151 Idaho at 346, 256 P.3d at 754. One such exception is "[c]onsent voluntarily given by someone with authority." *Id*. In such instances, "[t]he burden is on the State to show that the consent exception applies." *Id*.

In this case, Haynes challenges the constitutionality of ISP's warrantless breath alcohol test in connection with the State's prosecution of her for the crime of DUI. Much of the case law that has been developed to date addressing the intersection of the Fourth Amendment, implied consent, and chemical testing for alcohol has involved blood alcohol testing. Out the outset, it is worth noting that blood draws differ in certain material respects from breath tests. For one, the level of intrusion and inconvenience is not the same. Whereas a breath test requires a test subject to merely exhale and reveals only information about alcohol concentration, a blood draw is more invasive because it involves the piercing of skin and is capable of revealing more information about the subject than just his or her blood alcohol concentration. Second, breath tests require some level of cooperation, as there cannot be forced breath tests in the same way there can be forced blood draws—subjects simply cannot be held down and forced to give breath. For these reasons, the constitutional analysis of blood and breath tests will not be identical.

Returning to the facts of this case, because a breath test is a search and because ISP conducted Haynes's test without a warrant, the State bears the burden of demonstrating that Haynes validly consented to the test. The State carried its burden in this case. "Idaho's implied consent statute must jump two hurdles to qualify as voluntary: (1) drivers give their initial consent voluntarily and (2) drivers must continue to give voluntary consent. Drivers in Idaho

15

give their initial consent to evidentiary testing by driving on Idaho roads voluntarily." *Wulff*, 157 Idaho at ___, 337 P.3d at 582. In this case, Haynes initially consented by driving on Idaho roads and did not later object or take steps to withdraw her implied consent to the breath test after being placed under arrest. To the contrary, she admits that she agreed to take the test, but argues her consent was involuntary because it was obtained only after she was informed of the administrative penalties and license suspension consequences that would result if she refused the test. Haynes contends that these penalties are coercive and amount to an unconstitutional condition. For this reason alone, she asserts that her consent was invalid because it was coerced with the threat of penalties. This argument is unavailing.

Law enforcement officers use the ALS Form to inform drivers suspected of DUI of their legal obligations with respect to evidentiary testing for alcohol concentration, as well as the administrative penalties for failing or refusing the same.[1] The first portion of the Form states:

> I have reasonable grounds to believe that you were driving or were in physical control of a motor vehicle while under the influence of alcohol, drugs, or other intoxicating substances. You are required by law to take one or more evidentiary test(s) to determine the concentration of alcohol or the presence of drugs or other intoxicating substances in your body. After submitting to the test(s), you may, when practical, at your own expense, have additional test(s) made by a person of your own choosing. You do not have the right to talk to a lawyer before taking any evidentiary test(s) to determine the alcohol concentration or presence of drugs or other intoxicating substances in your body.

While this portion of the ALS Form informed Haynes of her legal obligation to submit to an evidentiary test, the second and third portions of the same form informed her of the consequences of refusing a test and failing a test respectively. The ALS Form tracks Idaho Code sections 18-8002 and 18-8002A, which establish a bifurcated administrative penalty scheme

---

[1] Law enforcement officers routinely rely upon a form promulgated by the Idaho Department of Transportation entitled "Notice of Suspension for Failure of Evidentiary Testing (Advisory for Sections 18-8002 and 18-8002A, Idaho Code)" prior to administering blood or breath alcohol tests to subjects suspected of DUI. This is commonly referred to as an "ALS Form" or reading the "ALS advisories." In this case the ISP trooper played an audio recording which the trooper stated, and the parties stipulated, was virtually identical to the contents of the ALS Form. Whereas the ALS Form states, "I have reasonable grounds to believe. . .", the audio recording states, "The trooper has reasonable grounds to believe. . .". This is the only difference between the recording that was played to Haynes and the ALS Form. When the audio recording is not used, the ALS Form is read verbatim to DUI suspects.

based on whether a DUI suspect refuses to take an evidentiary test or instead opts to take a test and fails.

Pursuant to this scheme, Haynes was informed that should she refuse to take or complete a test, she would be subject to a civil penalty of $250, a one year license suspension for a first refusal, and a two year suspension for a second refusal within ten years. Haynes was further informed that should she take a test and fail, her license would be suspended for a certain period of time, contingent upon any prior failed tests. If this was her first failed test within the last five years, her license would be automatically suspended for 90 days with no driving privileges for the first 30 days, but with the option for restricted privileges for the remaining 60 days. If, however, Haynes had failed an evidentiary test within the last five years, she was informed that an additional failure would lead to one year suspension with no driving privileges of any kind.

There is no dispute that Trooper Keys, through the playing of the audio ALS advisories, accurately informed Haynes both of her legal duty to submit to blood or breath alcohol testing as well as the statutory consequences for refusing or failing a test. Further, the record demonstrates that Keys actually gave Haynes the choice of consenting or refusing. This establishes that Haynes had the ability to withdraw her statutorily implied consent. On appeal, Haynes cites the following language in the ALS Form as support for her coercion argument: "You are required by law to take one or more evidentiary tests to determine the concentration of alcohol or the presence of drugs or other intoxicating substances in your body." This argument, however, improperly takes this provision out of the larger context of the entire ALS Form. Although this language, on its own, would be problematic in so far as it conflicts with this Court's precedent that implied consent must be capable of being withdrawn, the ALS Form goes on to advise a DUI suspect of the specific consequences for his or her refusal to submit to testing. This inherently affords a subject like Haynes the option of revoking or withdrawing his or her statutorily implied consent by refusing evidentiary testing.

Haynes does not argue on appeal that Keys did not have reasonable grounds to believe that she was driving under the influence. Further, there is no allegation that the entire ALS recording was not played to her or that the ALS advisories inaccurately informed her of the administrative penalties she faced if she failed or refused to submit to testing. The record, in fact, reflects that the entire recording was played. Instead, Haynes challenges the constitutionality of the administrative penalty scheme, arguing this scheme and the reading of the ALS advisories

17

amounts to coercion rendering her consent involuntary. More precisely, Haynes asserts that "[a] state may not pass a law that visits penalties upon a citizen for exercising a constitutional right." In response, the State argues that Haynes both impliedly and actually consented to the breath test and that these civil penalties do not amount to coercion or render her consent involuntary.

Haynes's consent was voluntary and not vitiated for two related reasons. First, consent to an evidentiary test can be voluntary even if given to avoid administrative penalties. Second, the administrative penalty scheme at issue here is a reasonable condition attached to the privilege of driving on Idaho roads and does not infringe upon the Fourth Amendment. Both grounds, however, involve a reasonableness analysis, given that reasonableness is the constitutional benchmark for government searches

Idaho's implied consent statute requires the State to prove that a driver gave his or her initial consent voluntarily and also gave voluntary consent at the time of the evidentiary test. *Wulff*, 157 Idaho at ___, 337 P.3d at 582. While the first prong is not disputed in this appeal, the second prong is at issue. In assessing the validity of Haynes's consent at the time she was pulled over, arrested, and the breath test administered, it must be determined whether her consent was voluntarily given or instead the result of duress or coercion, direct or implied. *Schneckloth v. Bustamonte*, 412 U.S. 218, 221, 93 S. Ct. 2041, 2044 (1973); *Hansen*, 138 Idaho at 796, 69 P.3d at 1057. Whether consent was granted voluntarily, or was instead a product of coercion, is a question of fact to be determined by assessing the totality of all the surrounding circumstances. *State v. Varie*, 135 Idaho 848, 852, 26 P.3d 31, 35 (2001); *Schneckloth*, 412 U.S. at 229, 93 S.Ct. at 2048–49. This analysis specifically accounts for subtle coercive police tactics and questions, as well as the subjective state of the party granting consent to search. *Id.*

A voluntary decision is one that is "the product of an essentially free and unconstrained choice by its maker." *Schneckloth*, 412 U.S. at 225, 93 S. Ct. at 2047. An individual's consent is involuntary, on the other hand, "if his will has been overborne and his capacity for self-determination critically impaired." *Id.* Nothing in the record indicates that Haynes's will was overborne or her capacity for self-determination critically impaired by the playing of the ALS advisories. To the contrary, the administrative penalties for refusing an evidentiary test for alcohol concentration are less severe and exert much less pressure than circumstances or

18

scenarios where courts have held consent to be rendered involuntary.[2] Haynes does not outline or argue the presence of any of these traditional coercion factors—she does not challenge the manner in which Trooper Keys conducted the traffic stop or arrest, the location or conditions of her consent, or any of the other typical indicia of coercion. Instead, her sole contention on appeal is that the administrative penalty scheme amounts to an unconstitutional condition because it presents her with the unconstitutional choice of submitting to an evidentiary test in violation of her constitutional rights or facing administrative penalties.[3]

"The voluntariness of consent is not impaired simply because one is faced with two unpleasant choices," assuming that both choices are constitutionally sound. *State v. Garcia*, 143

---

[2] In finding consent to be vitiated or coerced, courts tend to consider whether there were numerous officers involved in the confrontation, *Castellon v. United States*, 864 A.2d 141, 155 (D.C. 2004); *United States v. Jones*, 846 F.2d 358, 361 (6th Cir. 1988); the location and conditions of the consent, including whether it was at night, *United States v. Mapp*, 476 F.2d 67, 77–78 (2d Cir. 1973); whether the police retained the individual's identification, *United States v. Chemaly*, 741 F.2d 1346, 1353 (11th Cir. 1984); whether the individual was free to leave, *Ohio v. Robinette*, 519 U.S. 33, 39–40, 117 S. Ct. 417, 421 (1996); *Chemaly*, 741 F.2d at 1353; *State v. Gutierrez*, 137 Idaho 647, 651, 51 P.3d 461, 465 (Ct. App. 2002); and, whether the individual knew of his right to refuse consent, *Schneckloth*, 412 U.S. at 248–49, 93 S. Ct. at 2059; *Chemaly*, 741 F.2d at 1353; *State v. Jones*, 126 Idaho 791, 793, 890 P.2d 1214, 1216 (Ct. App. 1995).

[3] Haynes relies upon a number of cases allegedly standing for the proposition that "[a] state may not pass a law that visits penalties upon a citizen for exercising its constitutional rights." Without diving into the nuances of all of these cases so as to distinguish them from the facts presented in this appeal, all of the cases relied upon by Haynes involve municipal schemes attaching civil or criminal penalties for refusing otherwise warrantless searches of dwellings. These cases have no bearing on this appeal because, for one, the privacy interest in a dwelling is much greater than the privacy interest a person has in his or her alcohol concentration while driving on public roads, and two, unlike the plaintiffs in these cases, Haynes was arrested and in custody, and thus had a diminished expectation of privacy, at the time the warrantless search was conducted.

As an illustration, one of the key cases Haynes relies upon for this proposition is *Camara v. Municipal Court of San Francisco*, 387 U.S. 523, 87 S. Ct. 1727 (1967). *Camara* involved a property owner facing penalties and fines for refusing to allow a warrantless inspection of his property, as required under the municipal housing code. The *Camara* Court reasoned that administrative searches of private dwellings intrude upon the interests protected by the Fourth Amendment. *Id.* at 534, 87 S. Ct. at 1733. The Court held that the property owner had the right to insist on a warrant because there was no probable cause to believe that the property owner had violated any law and because there were no exigent circumstances preventing the government from obtaining a warrant. *Camara,* 387 U.S. at 539, 87 S. Ct. at 1736. Haynes' situation is not similar to the facts of *Camara*, as there was probable cause to believe that she had been driving under the influence of alcohol and she had already been arrested on that charge. Thus, Haynes' reliance on *Camara*, and the other related cases, is unavailing.

Idaho 774, 779, 152 P.3d 645, 650 (Ct. App. 2006). In this instance, Haynes is arguing that the choices offered by Idaho Code sections 18-8002 and 18-8002A constitute an invalid infringement on her constitutional right against unreasonable government searches and seizures. Thus, the issue at the center of this appeal is whether the administrative penalty scheme is reasonable and constitutionally sound.

"As the text of the Fourth Amendment indicates, the ultimate measure of the constitutionality of a government search is 'reasonableness.'" *Vernonia Sch. Dist. 47J v. Acton*, 515 U.S. 646, 652, 115 S. Ct. 2386, 2390 (1995). In a case like this, "where there was no clear practice, either approving or disapproving the type of search at issue, at the time the constitutional provision was enacted, whether a particular search meets the reasonableness standard is judged by balancing its intrusion on the individual's Fourth Amendment interests against its promotion of legitimate governmental interests." *Id.* at 652–53, 115 S. Ct. at 2390 (quotations, citation, and footnote omitted). For the following reasons, the privacy intrusion imposed by breath alcohol searches under Idaho's statutory scheme generally, and the manner in which Trooper Keys actually conducted Haynes's traffic stop, DUI arrest, and breath alcohol test, is slight or quite limited. In the DUI context, the United States Supreme Court has determined that the privacy invasion effected by breath tests is minimal. *Skinner*, 489 U.S. at 625, 109 S. Ct. at 1418. In so holding, the *Skinner* Court reasoned, "Unlike blood tests, breath tests do not require piercing the skin and may be conducted safely outside a hospital environment and with a minimum of inconvenience or embarrassment. Further, breath tests reveal [only] the level of alcohol in the [subject's] bloodstream and nothing more." *Id.*

In addition to the level of intrusion being slight or minimal, a driver like Haynes has a diminished expectation of privacy. At the time she was asked to submit to a breath test, Haynes had already been placed under arrest on probable cause of DUI. Such a driver has a diminished expectation of privacy because he or she is in custody. *King*, ___ U.S. ___, 133 S. Ct. at 1978. Further eroding Haynes' expectation of privacy is the implied consent statute, which gives Haynes statutory notice that if reasonable grounds exist, "some reasonable police intrusion on [her] privacy is to be expected." *Id.* at 1969. For these reasons, the intrusion on Haynes' personal privacy was slight or quite limited in this case.

On the other side of the scale, a statutory scheme which encourages a driver reasonably suspected of DUI to submit to testing revealing the level of alcohol concentration in his or her

20

system promotes legitimate governmental interests. There is a compelling government interest in securing the safety of public roads, protecting lives, and deterring drivers from operating vehicles while intoxicated. Impaired drivers present an enormous threat to themselves and others, and the State has a strong interest in taking these drivers off the road. While drivers have a legitimate interest in avoiding the physical and privacy intrusions stemming from a breath alcohol test, this interest is far outweighed by the State's public safety interest.

In summary, the intrusion on Haynes was quite limited and her expectation of privacy was diminished. These privacy factors are far outweighed by strong and compelling government public safety interests. The breath test, if properly calibrated and administered, has proven minimally invasive, reliable, effective, and prompt. Furthermore, a breath test is narrowly targeted and reveals only the level of alcohol concentration in a subject's system. Most importantly, a breath test can only be administered with a subject's cooperation and only if there are reasonable grounds to believe that subject is driving or in physical control of a motor vehicle while under the influence. In this case, Haynes voluntarily consented to the test. The administrative penalty scheme does not vitiate this consent simply because it attaches a qualified evidentiary testing condition to the privilege of driving in Idaho, a condition which is constitutionally reasonable.

The administrative penalty scheme enacted by the legislature was clearly intended to encourage drivers reasonably suspected of DUI to submit to evidentiary testing. Specifically, the administrative penalties for refusing a test are more severe than the administrative penalties for taking and failing a test. This incentive, on its own, is not constitutionally infirm. Furthermore, these penalties are civil or administrative in nature, separate and apart from the criminal consequences of a failed test. It is reasonable for the Legislature to encourage or incentivize this choice. Absent this type of framework, enforcement of DUI laws would be nearly impossible because a driver reasonably suspected of DUI would never rationally submit to an evidentiary test. Lastly, the ratios at issue here, specifically a one year license suspension for refusing a test as opposed to a 90 day suspension for a first failure, are not so out of proportion so as to render them unreasonable and unconstitutional.

For all of the reasons outlined above, Idaho Code sections 18-8002 and 18-8002A do not attach an unconstitutional condition to driving and the privacy intrusions created by these statutory conditions are constitutionally justified and reasonable. Based on the totality of the

circumstances and the facts presented in this case, Haynes's consent to the breath alcohol test was voluntary and not vitiated by the trooper advising her of the administrative penalties for refusing the test. Accordingly, I would affirm the district court's conclusion that Hayne's voluntary consent to the breath test provided an exception to the warrant requirement.