## IN THE SUPREME COURT OF THE STATE OF IDAHO
### Docket No. 41179

| | | |
|---|---|---|
| STATE OF IDAHO, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | **Boise, August 2014 Term** |
| | ) | |
| v. | ) | **2014 Opinion No. 105** |
| | ) | |
| MICAH ABRAHAM WULFF, | ) | **Filed: October 29, 2014** |
| | ) | |
| Defendant-Respondent. | ) | **Stephen W. Kenyon, Clerk** |
| | ) | |

Appeal from the District Court of the First Judicial District, State of Idaho, Kootenai County. Hon. Benjamin R. Simpson, District Judge.

District court order granting motion to suppress, <u>affirmed.</u>

Hon. Lawrence G. Wasden, Idaho Attorney General, Boise for appellant. Kenneth K. Jorgensen, Deputy Attorney General argued.

Phelps & Associates, Spokane, for respondent. Douglas D. Phelps argued.

_____

BURDICK, Chief Justice

The State of Idaho appeals the Kootenai County district court's grant of Micah Wulff's motion to suppress evidence obtained in a warrantless blood draw. That blood draw took place after Wulff was in custody for driving under the influence. The district court held that the United States Supreme Court's holding in *Missouri v. McNeely*, 569 U.S. ___, 133 S. Ct. 1552 (2013) suggests that warrantless blood draws are not always permitted under Idaho's implied consent statute. The State argues that *McNeely* was limited to the exigent circumstances exception to the warrant requirement and Idaho's implied consent statute is a valid exception to the warrant requirement. We affirm the district court.

### I. FACTUAL AND PROCEDURAL BACKGROUND

On October 23, 2012, a sheriff's deputy stopped Micah Wulff after observing Wulff's vehicle speeding twenty-five to thirty-five miles an hour over the speed limit. The deputy asked Wulff why he was driving so fast. Wulff replied, "I don't know, I probably shouldn't be

1

driving." As Wulff spoke, the deputy smelled an alcoholic beverage odor coming from the vehicle. The deputy noticed that the smell grew stronger as Wulff exited his vehicle and observed that Wulff's eyes were red and bloodshot. Wulff admitted he had been drinking and then had difficulties with the field sobriety evaluations. The deputy reported that he believed Wulff was driving under the influence (DUI) based upon Wulff's field sobriety test, speeding, admission he had been drinking, and alcohol odor.

The deputy then took Wulff into custody. Wulff refused a breath test, so the deputy informed Wulff that he would take him to the hospital for a blood draw. Wulff stated that he understood and accompanied the deputy to his vehicle. At the hospital, Wulff became uncooperative as a nurse began to prepare his arm for a blood draw. Wulff placed his left arm in a blocking position and told the nurse "you're not touching me." After two security officers arrived, Wulff allowed the nurse to draw his blood. The deputy did not obtain a warrant for the blood test. The test results showed a .217 blood alcohol content.

The State charged Wulff with felony DUI. Wulff moved to suppress the blood draw results. Wulff argued that he did not consent to the blood draw and there were no exigent circumstances to allow a warrantless blood draw. The State argued that the warrantless blood draw was appropriate under Idaho's implied consent statute, Idaho Code section 18-8002, because Wulff gave his irrevocable implied consent to the blood draw by taking advantage of the privilege of driving on Idaho's roads. The State further argued that *Missouri v. McNeely* did not decide the constitutionality of implied consent statutes, so Idaho's implied consent statute allows warrantless blood draws under the consent exception to the warrant requirement. Alternatively, the State argued that exigent circumstances justified the warrantless blood draw.

The district court granted Wulff's motion to suppress. The court first concluded that *McNeely* indicated that implied consent statutes cannot act as per se exceptions to the warrant requirement because *McNeely* emphasized the importance of the totality of the circumstances. The court reasoned that while *McNeely* did not explicitly address implied consent statutes, "it would be antithetical to interpret the *McNeely* opinion as permitting warrantless blood draws simply because a state has legislation that allows such action." After discounting the State's implied consent argument, the court determined that exigent circumstances did not justify the warrantless blood draw. The State timely appealed.

2

## II. STANDARD OF REVIEW

We review a district court's order granting a motion to suppress evidence using a bifurcated standard of review. *State v. Purdum*, 147 Idaho 206, 207, 207 P.3d 182, 183 (2009). This Court accepts the trial court's findings of fact unless they are clearly erroneous, but may freely review the trial court's application of constitutional principles in light of those facts. *Id.* We must follow controlling precedent "unless it is manifestly wrong, unless it has proven over time to be unjust or unwise, or unless overruling it is necessary to vindicate plain, obvious principles of law and remedy continued injustice." *State v. Watts*, 142 Idaho 230, 232, 127 P.3d 133, 135 (2005) (quoting *Reyes v. Kit Mfg. Co.*, 131 Idaho 239, 240, 953 P.2d 989, 990 (1998)).

## III. ANALYSIS

### A. The district court correctly granted Wulff's motion to suppress.

The district court granted Wulff's motion to suppress. The court held that the consent exception to the warrant requirement did not apply and the officer's warrantless blood draw was not justified by exigent circumstances. The court's holding on exigent circumstances is not at issue. Instead, the State focuses on the district court's holding that the Idaho implied consent statute did not fall into the consent exception to the Fourth Amendment.

The district court stated that "the recent United States Supreme Court case *Missouri v. McNeely*, 569 U.S. ___ (2013) places new limits on the ability of law enforcement to conduct a blood test without a warrant." The court focused on *McNeely*'s language that "[w]hether a warrantless blood test of a drunk-driving suspect is reasonable must be determined case by case based on the totality of the circumstances." *McNeely*, 133 S. Ct. at 1563. The court reasoned that allowing warrantless blood draws based on Idaho's implied consent statute would act as a per se exception to the warrant requirement, which contradicted *McNeely*'s language that warrantless blood draws should be examined case by case. After acknowledging that *McNeely* did not explicitly address implied consent statutes, the court noted that interpreting the *McNeely* opinion as permitting warrantless blood draws simply because a state's legislation allows them would make *McNeely* "a dead letter." Thus, the court held that the blood draw did not fall within the consent exception to the Fourth Amendment's warrant requirement.

The State argues that the consent exception may be implied under Idaho's implied consent statute because the issue in *McNeely* was limited to "nonconsensual" blood testing and

3

*McNeely*'s holding was limited to blood draws taken under the exigency exception. The State also argues that *McNeely* endorsed implied consent laws.

Requiring that a person submit to a blood alcohol test is a search and seizure under the Fourth Amendment to the United States Constitution and Article I Section 17 of the Idaho Constitution. *Schmerber v. California*, 384 U.S. 757, 767 (1966); *State v. Diaz*, 144 Idaho 300, 302, 160 P.3d 739, 741 (2007). "Like the Fourth Amendment, the purpose of Art. I, § 17 is to protect Idaho citizens' reasonable expectation of privacy against arbitrary governmental intrusion." *State v. Holton*, 132 Idaho 501, 503, 975 P.2d 789, 791 (1999). We will not address the Idaho Constitution in this case because the district court's decision and the parties' arguments were confined to the United States Constitution.

The Fourth Amendment provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV. Warrantless searches and seizures are presumptively unreasonable under the Fourth Amendment. *Coolidge v. New Hampshire*, 403 U.S. 443 454–55 (1971); *Diaz*, 144 Idaho at 302, 160 P.3d at 741. To overcome this presumption of unreasonableness, the search must fall within a well-recognized exception to the warrant requirement. *Coolidge*, 403 U.S. at 455; *Diaz*, 144 Idaho at 302, 160 P.3d at 741. Exigency and consent are two well-recognized exceptions to the warrant requirement. *Kentucky v. King*, 131 S. Ct. 1849 (2011); *Diaz*, 144 Idaho at 302, 160 P.3d at 741.

1. Exigency and Implied Consent in Idaho

We have held law enforcement officers do not need a warrant for a forced blood draw based upon the exigency and consent exceptions to the warrant requirement. *State v. Woolery*, 116 Idaho 368, 370, 775 P.2d 1210, 1212 (1989), *abrogated by Missouri v. McNeely*, 133 S. Ct. 1552 (2013) (exigency); *Diaz*, 144 Idaho at 303, 160 P.3d at 742 (consent). As to exigency, this Court held that warrantless blood draws are permissible under that exception because "the destruction of the evidence by metabolism of alcohol in the blood provides an inherent exigency which justifies the warrantless search." *Woolery*, 116 Idaho at 370, 775 P.2d at 1212. In other words, the fact that our bodies metabolize alcohol over time means that valuable evidence is lost

in the time required to get a warrant, which created exigent circumstances to allow a warrantless blood draw. *See State v. DeWitt*, 145 Idaho 709, 712, 184 P.3d 215, 218 (Ct. App. 2008).

We also held that Idaho's implied consent statute allows warrantless blood draws under the consent exception. *Diaz*, 144 Idaho at 302–03, 160 P.3d at 741–42. Idaho Code section 18-8002 provides that a person gives "implied consent" to evidentiary testing, including blood draws, when that person drives on Idaho roads and a police officer has "reasonable grounds to believe that person has been driving or in actual physical control of a motor vehicle in violation of [Idaho's DUI statute]."[1] That statute provides penalties for any driver who refuses to comply with testing, including a one-year driver's license suspension and a $250 fine for the first refusal. I.C. § 18–8002(4). Implied consent to evidentiary testing includes consent to Breathalyzer tests and blood tests. I.C. § 18–8002(9). In *Diaz*, police ordered a blood draw over a driver's objections because the officer had reasonable grounds to believe the driver was under the influence. 144 Idaho at 303, 160 P.3d at 742. We reasoned that "[b]ecause Diaz had already given his implied consent to evidentiary testing by driving on an Idaho road, he also gave his consent to a blood draw." *Id.* We based our holding solely on the implied consent exception. Therefore, prior to *Missouri v. McNeely*, warrantless blood draws fit under both exceptions to the warrant requirement.

2. *Missouri v. McNeely*'s impact on exigency and implied consent as exceptions to the warrant requirement.

*Missouri v. McNeely* indicates that Idaho cannot use a per se exigency exception to the warrant requirement based upon the natural dissipation of alcohol in the bloodstream. In *McNeely*, the defendant was pulled over for driving erratically, refused a Breathalyzer test, and was taken to a hospital for a warrantless forced blood draw. 133 S. Ct. at 1556–57. The defendant moved to suppress his blood test results, arguing the warrantless blood draw violated his rights under the Fourth Amendment. *Id.* The United States Supreme Court held that "the natural metabolization of alcohol in the bloodstream" did not present a "per se exigency that justifies an exception to the Fourth Amendment's warrant requirement for nonconsensual blood

---

[1] Idaho Code section 18–8002 (1) states:

Any person who drives or is in actual physical control of a motor vehicle in this state shall be deemed to have given his consent to evidentiary testing for concentration of alcohol as defined in section 18-8004, Idaho Code, and to have given his consent to evidentiary testing for the presence of drugs or other intoxicating substances, provided that such testing is administered at the request of a peace officer having reasonable grounds to believe that person has been driving or in actual physical control of a motor vehicle in violation of the provisions of section 18-8004, Idaho Code, or section 18-8006, Idaho Code.

testing in all drunk-driving cases" *Id.* at 1556. The Court held that instead, "exigency in this context must be determined case by case based on the totality of the circumstances." *Id.*[2] In other words, the body's ability to metabolize alcohol is just one factor that a court can consider as part of the totality of circumstances test.[3] The Court in *McNeely* cited *State v. Woolery* as a jurisdiction that has held the body's natural dissipation of alcohol alone provides a per se exception to the warrant requirement in DUI cases. *McNeely*, 133 S. Ct. at 1558, n. 2. Accordingly, *McNeely* abrogated *Woolery*'s holding that the natural dissipation of alcohol always creates an exigency exception in drunk-driving cases. The rule is now that the exigency exception applies based on the totality of the circumstances, which is analyzed case by case.

While Idaho's exigency exception no longer applies in every drunk-driving case, current Idaho precedent holds that forced blood draws based on the implied consent exception fall under the alternate consent exception to the warrant requirement. *Diaz*, 144 Idaho at 303, 160 P.3d at 742. *Missouri v. McNeely* did not directly address whether warrantless forced blood draws can be justified by implied consent and its holding applied to the exigency exception only. *McNeely*, 133 S. Ct. at 1568. However, *McNeely* repeatedly indicated that "[w]hether a warrantless blood test of a drunk-driving suspect is reasonable must be determined case by case based on the totality of the circumstances." *Id.* at 1563. Here, the district court determined that *McNeely* applied to all warrantless blood draws, stating "[*McNeely*] places new limits on the ability of law enforcement to conduct a blood test without a warrant." However, the State argues that the United States Supreme Court's holding in *McNeely* applies only to exigency. Thus, the issue is whether *McNeely*'s holding is narrow and limited to the exigency exception, or is broader and applies to all per se exceptions to the warrant requirement.

The argument that *McNeely* applies only to exigency requires a narrow reading of *McNeely*'s holding. Indeed, in the context of the exigency exception and only after extensive analysis of the exigency exception, the United States Supreme Court stated that "[w]hether a warrantless blood test of a drunk-driving suspect is reasonable must be determined case by case based on the totality of the circumstances." *McNeely*, 133 S. Ct. at 1563. Also, the plurality

---

[2] The Court in *McNeely* repeatedly emphasized the particular circumstances that go into the totality of the circumstances analysis. For example, the Court emphasized that the analysis varies as to the "reasonableness" of whether a warrant could have been obtained. *Id.* at 1559. Across the country different areas have different resources in place to process warrants. *Id.* at 1562. The Court also noted that the fact that a traffic stop is "routine" does not mean a warrant is always required. *Id.* at 1568.

[3] The Court did not hold that the body's natural dissipation of alcohol can never provide an exigency exception to the warrant requirement, only that it cannot provide a per se exception.

6

opinion cited implied consent laws as one of a state's "broad range of legal tools to enforce their drunk-driving laws and to secure BAC evidence without undertaking warrantless nonconsensual blood draws." *Id.* at 1566 (plurality opinion). The Court noted that these "implied consent laws [] require motorists, as a condition of operating a motor vehicle in the State, to consent to BAC testing if they are arrested or otherwise detained on suspicion of a drunk-driving offense." *Id.* The plurality's reference to implied consent as a tool to enforce drunk driving laws combined with the holding on exigency make it plausible to read *McNeely* as only applying to exigency.

However, *McNeely*'s overall discussion suggests a broader reading: that implied consent is no longer acceptable when it operates as a per se exception to the warrant requirement because the Court repeatedly expressed disapproval for categorical rules. The Court began its analysis by discussing that *Schmerber v. California* applied the totality of the circumstances approach. *McNeely*, 133 S. Ct. at 1559–60. After acknowledging that the body's metabolic processes meant a person's blood alcohol content declines with time, the Court nevertheless criticized the State's per se "categorical rule." *Id.* at 1560–61. The Court noted that some circumstances would make obtaining a warrant so impractical that the body's natural dissipation of alcohol could support exigency, but that was "a reason to decide each case on its facts, as we did in *Schmerber*, not to accept the 'considerable overgeneralization' that a per se rule would reflect." *Id.* at 1561. Thus, according to the Court, "[i]n those drunk-driving investigations where police officers can reasonably obtain a warrant before a blood sample can be drawn without significantly undermining the efficacy of the search, the Fourth Amendment mandates that they do so." *Id*. After that, the Court discussed technological advances that allow for warrants to be processed faster, which also would be involved in the analysis. *Id.* at 1561–62. This discussion ended with the Court stating, "Whether a warrantless blood test of a drunk-driving suspect is reasonable must be determined case by case based on the totality of the circumstances." *Id.* at 1263. Later in its opinion, the Court again emphasized that a warrant might be required after a driver refuses to consent to a blood draw:

> Here and in its own courts the State based its case on an insistence that a driver who declines to submit to testing after being arrested for driving under the influence of alcohol is always subject to a nonconsensual blood test without any precondition for a warrant. That is incorrect.

*McNeely*, 133 S. Ct. at 1568. As a result, *McNeely*'s overall discussion supports reading the Court's preference for a totality of the circumstances requirement as going beyond just the exigency exception.

Others courts have read *McNeely* broadly as prohibiting all per se exceptions to the warrant requirement. *See Weems v. State*, 434 S.W.3d 655 (Tex. Ct. App. 2014); *Aviles v. State*, 2014 WL 3843756 (Tex. Ct. App. Aug. 6, 2014). These Texas courts have found this reading is supported by the U.S. Supreme Court's treatment of *Aviles v. State*, 385 S.W.3d 110 (Tex. Ct. App. 2012), *cert. granted, judgment vacated*, 134 S. Ct. 902 (U.S. 2014). We agree.

The Texas Court of Appeals in *Aviles v. State* addressed whether Texas's implied consent statute was an exception to the warrant requirement. In *Aviles*, a law enforcement officer arrested a defendant with probable cause for DUI and discovered the defendant had two prior DUI convictions. 385 S.W.3d at 112. After reading the defendant his statutory warning that he could refuse evidentiary testing, the officer requested that the defendant provide a blood or breath specimen. *Id.* The defendant refused, and the officer then required the defendant to submit to a blood draw under Texas Transportation Code section 724.12 (b)(3)(B):

> A peace officer shall require the taking of a specimen of the person's breath or blood under any of the following circumstances . . . [including when] at the time of the arrest, the officer possesses or receives reliable information from a credible source that the person, on two or more occasions, has been previously convicted of or placed on a community supervision for an offense under Section 49.04 [DWI].

385 S.W.3d at 112. The trial court admitted the defendant's blood test results based on this implied consent statute. *Id.* at 113. The Texas Court of Appeals affirmed, stating that because the defendant's refusal took place when he had two prior DUIs, this was one of the statutory "circumstances" that allowed a warrantless blood draw. *Id.* at 116. The court therefore concluded that the warrantless blood draw was allowed under the Transportation Code and did not violate the defendant's Fourth Amendment rights. *Id.* Thus, the *Aviles* court's holding that a warrantless blood draw was constitutional was based exclusively on the implied consent exception to the warrant requirement.

After granting certiorari in *Aviles*, the United States Supreme Court vacated the judgment and remanded the case "for further consideration in light of *Missouri v. McNeely*." 134 S. Ct. 902 (U.S. 2014). While this remand does not state anything further about how *McNeely* should be interpreted, the Court's remand must indicate that *McNeely*'s holding includes examining the

totality of the circumstances in all cases where an officer orders a forced warrantless blood draw. *See Weems*, 434 S.W.3d at 665 ("*McNeely,* however, clearly proscribed what it labeled *categorical* or *per se* rules for warrantless blood testing, emphasizing over and over again that the reasonableness of a search must be judged based on the totality of the circumstances presented in each case."). Therefore, distinguishing *McNeely* based on the fact it involved exigent circumstances is not viable because vacating and remanding *Aviles* in light of *McNeely* showed the United States Supreme Court rejected Texas's implied consent statute as a per se exception to the Fourth Amendment.

Finally, irrevocable implied consent operates as a per se rule that cannot fit under the consent exception because it does not always analyze the voluntariness of that consent. Voluntariness has always been analyzed under the totality of the circumstances approach: "whether a consent to a search was in fact 'voluntary' . . . is a question of fact to be determined from the totality of all the circumstances." *Schneckloth v. Bustamonte*, 412 U.S. 218, 227 (1973). Further, the State has the burden to prove that "consent was, in fact, freely and voluntarily given." *Id.* at 222 (quoting *Bumper v. N. Carolina*, 391 U.S. 543, 548 (1968)). Consent is not voluntary if it is "the product of duress or coercion, express or implied." *Schneckloth*, 412 U.S. at 227. When the Court has determined whether a suspect's consent was voluntary or coerced, its decisions "each reflected a careful scrutiny of all the surrounding circumstances" and "none of them turned on the presence or absence of a single controlling criterion." *Id*. at 226. The Court has also stated

> The Fourth Amendment does not proscribe all state-initiated searches and seizures; it merely proscribes those which are unreasonable. Thus, we have long approved consensual searches because it is no doubt reasonable for the police to conduct a search once they have been permitted to do so. The standard for measuring the scope of a suspect's consent under the Fourth Amendment is that of "objective" reasonableness-what would the typical reasonable person have understood by the exchange between the officer and the suspect?

*Florida v. Jimeno*, 500 U.S. 248, 250–51 (1991) (internal citations omitted). Given that "[t]he touchstone of the Fourth Amendment is reasonableness," *id.* at 250, and that the United States Supreme Court has repeatedly emphasized a totality of the circumstances approach is necessary to determine voluntariness for consent, requiring a totality of the circumstances approach to determine a driver's consent fits within the Court's existing precedent.

Analyzing consent under a totality of the circumstances approach considers whether a person could change his mind and revoke his consent. A holding that the consent implied by statute is irrevocable would be utterly inconsistent with the language in *McNeely* denouncing categorical rules that allow warrantless forced blood draws. This is why the district court remarked that "implied consent statutes would have the effect of making the *McNeely* decision of little or no consequence."

The State argues the United States Supreme Court has specifically held implied consent laws are valid. Indeed, the United States Supreme Court has upheld implied consent statutes. *See Illinois v. Batchelder*, 463 U.S. 1112 (1983); *S. Dakota v. Neville*, 459 U.S. 553 (1983). But in these cases, the Court upheld the statutory consequences placed on defendants who refused to comply. The Court did not address the appropriateness of implied consent as an exception to the Fourth Amendment's warrant requirement. Thus, the State's reliance on these cases does not demonstrate that implied consent laws are constitutional.

Because of the United States Supreme Court's language in *McNeely*, remand of *Aviles*, and precedent requiring a totality of the circumstances analysis to determine voluntary consent, we read *McNeely* as prohibiting all per se exceptions to the warrant requirement. This conclusion is consistent with other states that have considered the issue. *E.g.*, *Byars v. State*, 130 Nev. Adv. Op. 85, ___ P.3d ___ (2014); *State v. Declerck*, 317 P.3d 794, 797 (Kan. Ct. App. 2014).

3. Idaho's implied consent statute is an unconstitutional per se exception to the warrant requirement.

The issue is then whether Idaho's implied consent statute is a per se rule that categorically allows warrantless blood draws. Idaho's implied consent statute must jump two hurdles to qualify as voluntary: (1) drivers give their initial consent voluntarily and (2) drivers must continue to give voluntary consent. Drivers in Idaho give their initial consent to evidentiary testing by driving on Idaho roads voluntarily. *State v. Diaz*, 144 Idaho 300, 303, 160 P.3d 739, 742 (2007). Because consent is implied based on driving on Idaho's roads, a further issue is whether the consent exception to the Fourth Amendment can apply after a driver attempts to revoke his consent to a blood draw.

The State argues that drivers cannot revoke their implied consent. While Idaho's statute recognizes the possibility that a driver can refuse a blood test and face a civil penalty, we have stated that "[n]othing in Idaho Code § 18-8002 limits the officer's authority to require a defendant to submit to a blood draw." *Diaz*, 144 at 303, 160 P.3d at 742. We have also stated:

10

"The Idaho legislature has acknowledged a driver's *physical ability to refuse* to submit to an evidentiary test, but it did not create *a statutory right* for a driver to withdraw his previously given consent to an evidentiary test for concentration of alcohol, drugs or other intoxicating substances." *State v. Woolery*, 116 Idaho 368, 372, 775 P.2d 1210, 1214 (1989) (emphasis in original). Thus, we have held that in Idaho a person cannot revoke his consent; any evidence an officer obtains from a blood test, even when that person resists or withdraws consent, will be admitted based on statutory implied consent. Because Idaho does not recognize a driver's right to revoke his implied consent, Idaho has a per se exception to the warrant requirement.

Because *McNeely* prohibits per se exceptions to the warrant requirement and the district court correctly understood Idaho's implied consent statute operated as a per se exception, Idaho's implied consent statute does not fall under the consent exception to the Fourth Amendment of the United States Constitution. Thus, we overrule *Diaz* and *Woolery* to the extent that they applied Idaho's implied consent statute as an irrevocable per se rule that constitutionally allowed forced warrantless blood draws. We hold the district court properly concluded that Idaho's implied consent statute was not a valid exception to the warrant requirement. We affirm the district court's grant of Wulff's motion to suppress.

## IV. CONCLUSION

We affirm the district court's grant of Wulff's motion to suppress.

Justices EISMANN, J. JONES, HORTON and WALTERS, Pro Tem, **CONCUR.**