W. JONES, Justice,
concurring.
The majority holds herein that the administration of the breath test did not violate Ms. Haynes’ rights because the Idaho Constitution only protects against unreasonable searches and breath tests are reasonable. I feel that such a ruling improperly abrogates the warrant requirement in lieu of a general reasonableness standard. The proper approach to this issue is to look to whether a previously established exception to the warrant requirement properly applies (in this case consent). Indeed, while a reasonableness analysis is necessary in this case to determine the constitutionality of the administrative penalty scheme, such analysis should take place within the greater context of the consent exception to the warrant requirement. For the reasons outlined below, the consent exception to the warrant requirement is applicable and Haynes’ consent was voluntary.
Idaho Code section 18-8002 provides that a person gives “implied consent” to evidentiary testing when that person drives on Idaho roads and that these tests can be administered when a police officer has “reasonable grounds to believe that [a] person has been driving or in actual physical control of a motor vehicle in violation of [Idaho’s DUI statute].” I.C. § 18-8002(1). This statutorily implied consent to evidentiary testing includes consent to breathalyzer tests and blood tests. I.C. § 18-8002(9)-(10). In the blood draw context, this Court has already held that warrantless searches for the presence of alcohol cannot, as a matter of course, be justified by implied consent. See State v. Arrotta, 157 Idaho 773, 774, 339 P.3d 1177, 1178 (2014); State v. Halseth, 157 Idaho 643, 647, 339 P.3d 368, 371 (2014); State v. Wulff, 157 Idaho 416, 423, 337 P.3d 575, 582 (2014). While McNeely centered on the exigency exception to the warrant requirement and did not squarely address implied consent, based on McNeely’s rationale, dicta, and progeny, the Court determined that implied consent cannot act as a per se exception to the warrant requirement. Wulff, 157 Idaho at 422, 337 P.3d at 581 (“[I]rrevocable im *47 plied consent operates as a per se rule that cannot fit under the consent exception because it does not always analyze the voluntariness of that consent.”). For this reason, “this Court has held that a suspect can withdraw his or her statutorily implied consent to a test for the presence of alcohol.” Arrotta, 157 Idaho at 774, 339 P.3d at 1178. Although these cases were decided in the blood draw context, the impact of these holdings on Idaho’s implied consent statute applies equally in the breath test context.
The opinions in Wulff, Halseth, and Arrotta were released shortly after the briefing for this appeal was submitted. These cases, which establish that statutorily implied consent must be capable of being withdrawn, dispense with one of the grounds heavily relied upon by the State in arguing for the constitutionality of ISP’s warrantless breath search of Haynes. These eases also nullify Haynes’s argument that McNeely invalidated Idaho’s implied consent statute. For this reason, the bifurcated approach adopted in the briefing, wherein the parties analyze statutorily implied consent separately from actual consent, is antiquated because this distinction, at least as briefed with no recognition of the ability to withdraw that consent, is no longer viable. Because implied consent is capable of being revoked, a party’s actual consent becomes relevant and implied consent is just one of many factors to be considered or folded into the larger consent analysis, a totality of the circumstances inquiry.
Given these recent developments, the issue presented in this appeal is whether Haynes’s consent to the breath alcohol test was truly voluntary. This inquiry requires this Court to determine whether the administrative penalty scheme laid out in Idaho Code sections 18-8002 and 18-8002A is constitutional.
“The Fourth Amendment of the U.S. Constitution and article I, section 17 of the Idaho Constitution each forbid unreasonable searches and seizures.” State v. Hansen, 151 Idaho 342, 346, 256 P.3d 750, 754 (2011); U.S. Const. amend. IV; Idaho Const. art. I, § 17. The United States Supreme Court has recognized that the Fourth Amendment applies to a breathalyzer test. Maryland v. King, — U.S. —, —, 133 S.Ct. 1958, 1969, 186 L.Ed.2d 1, 19-20 (2013); Skinner v. Ry. Labor Execs.’ Ass’n, 489 U.S. 602, 616, 109 S.Ct. 1402, 1414, 103 L.Ed.2d 639, 659 (1989). For a search to be reasonable, a warrant is presumptively required unless one of several judicially recognized exceptions to the warrant requirement applies. Hansen, 151 Idaho at 346, 256 P.3d at 754. One such exception is “[cjonsent voluntarily given by someone with authority.” Id. In such instances, “[t]he burden is on the State to show that the consent exception applies.” Id.
In this case, Haynes challenges the constitutionality of ISP’s warrantless breath alcohol test in connection with the State’s prosecution of her for the crime of DUI. Much of the case law that has been developed to date addressing the intersection of the Fourth Amendment, implied consent, and chemical testing for alcohol has involved blood alcohol testing. Out the outset, it is worth noting that blood draws differ in certain material respects from breath tests. For one, the level of intrusion and inconvenience is not the same. Whereas a breath test requires a test subject to merely exhale and reveals only information about alcohol concentration, a blood draw is more invasive because it involves the piercing of skin and is capable of revealing more information about the subject than just his or her blood alcohol concentration. Second, breath tests require some level of cooperation, as there cannot be forced breath tests in the same way there can be forced blood draws — subjects simply cannot be held down and forced to give breath. For these reasons, the constitutional analysis of blood and breath tests will not be identical.
Returning to the facts of this case, because a breath test is a search and because ISP conducted Haynes’s test without a warrant, the State bears the burden of demonstrating that Haynes validly consented to the test. The State carried its burden in this case. “Idaho’s implied consent statute must jump two hurdles to qualify as voluntary: (1) drivers give their initial consent voluntarily and *48 (2) drivers must continue to give voluntary-consent. Drivers in Idaho give their initial consent to evidentiary testing by driving on Idaho roads voluntarily.” Wulff, 157 Idaho at 423, 337 P.3d at 582. In this ease, Haynes initially consented by driving on Idaho roads and did not later object or take steps to withdraw her implied consent to the breath test after being placed under arrest. To the contrary, she admits that she agreed to take the test, but argues her consent was involuntary because it was obtained only after she was informed of the administrative penalties and license suspension consequences that would result if she refused the test. Haynes contends that these penalties are coercive and amount to an unconstitutional condition. For this reason alone, she asserts that her consent was invalid because it was coerced with the threat of penalties. This argument is unavailing.
Law enforcement officers use the ALS Form to inform drivers suspected of DUI of their legal obligations with respect to evidentiary testing for alcohol concentration, as well as the administrative penalties for failing or refusing the same.[1] The first portion of the Form states:
I have reasonable grounds to believe that you were driving or were in physical control of a motor vehicle while under the influence of alcohol, drugs, or other intoxicating substances. You are required by law to take one or more evidentiary test(s) to determine the concentration of alcohol or the presence of drugs or other intoxicating substances in your body. After submitting to the test(s), you may, when practical, at your own expense, have additional test(s) made by a person of your own choosing. You do not have the right to talk to a lawyer before taldng any evidentiary test(s) to determine the alcohol concentration or presence of drugs or other intoxicating substances in your body.
While this portion of the ALS Form informed Haynes of her legal obligation to submit to an evidentiary test, the second and third portions of the same form informed her of the consequences of refusing a test and failing a test respectively. The ALS Form tracks Idaho Code sections 18-8002 and 18-8002A, which establish a bifurcated administrative penalty scheme based on whether a DUI suspect refuses to take an evidentiary test or instead opts to take a test and fails.
Pursuant to this scheme, Haynes was informed that should she refuse to take or complete a test, she would be subject to a civil penalty of $250, a one year license suspension for a first refusal, and a two year suspension for a second refusal within ten years. Haynes was further informed that should she take a test and fail, her license would be suspended for a certain period of time, contingent upon any prior failed tests. If this was her first failed test within the last five years, her license would be automatically suspended for 90 days with no driving privileges for the first 30 days, but with the option for restricted privileges for the remaining 60 days. If, however, Haynes had failed an evidentiary test within the last five years, she was informed that an additional failure would lead to one year suspension with no driving privileges of any kind.
There is no dispute that Trooper Keys, through the playing of the audio ALS advisories, accurately informed Haynes both of her legal duty to submit to blood or breath alcohol testing as well as the statutory consequences for refusing or failing a test. Further, the record demonstrates that Keys *49 actually gave Haynes the choice of consenting or refusing. This establishes that Haynes had the ability to withdraw her statutorily implied consent. On appeal, Haynes cites the following language in the ALS Form as support for her coercion argument: “You are required by law to take one or more evidentiary tests to determine the concentration of alcohol or the presence of drugs or other intoxicating substances in your body.” This argument, however, improperly takes this provision out of the larger context of the entire ALS Form. Although this language, on its own, would be problematic in so far as it conflicts with this Court’s precedent that implied consent must be capable of being withdrawn, the ALS Form goes on to advise a DUI suspect of the specific consequences for his or her refusal to submit to testing. This inherently affords a subject hke Haynes the option of revoking or withdrawing his or her statutorily implied consent by refusing evidentiary testing.
Haynes does not argue on appeal that Keys did not have reasonable grounds to believe that she was driving under the influence. Further, there is no allegation that the entire ALS recording was not played to her or that the ALS advisories inaccurately informed her of the administrative penalties she faced if she failed or refused to submit to testing. The record, in fact, reflects that the entire recording was played. Instead, Haynes challenges the constitutionality of the administrative penalty scheme, arguing this scheme and the reading of the ALS advisories amounts to coercion rendering her consent involuntary. More precisely, Haynes asserts that “[a] state may not pass a law that visits penalties upon a citizen for exercising a constitutional right.” In response, the State argues that Haynes both impliedly and actually consented to the breath test and that these civil penalties do not amount to coercion or render her consent involuntary.
Haynes’s consent was voluntary and not vitiated for two related reasons. First, consent to an evidentiary test can be voluntary even if given to avoid administrative penalties. Second, the administrative penalty scheme at issue here is a reasonable condition attached to the privilege of driving on Idaho roads and does not infringe upon the Fourth Amendment. Both grounds, however, involve a reasonableness analysis, given that reasonableness is the constitutional benchmark for government searches.
Idaho’s implied consent statute requires the State to prove that a driver gave his or her initial consent voluntarily and also gave voluntary consent at the time of the evidentiary test. Wulff, 157 Idaho at 423, 337 P.3d at 582. While the first prong is not disputed in this appeal, the second prong is at issue. In assessing the validity of Haynes’s consent at the time she was pulled over, arrested, and the breath test administered, it must be determined whether her consent was voluntarily given or instead the result of duress or coercion, direct or implied. Schneckloth v. Bustamonte, 412 U.S. 218, 221, 93 S.Ct. 2041, 2044, 36 L.Ed.2d 854, 859 (1973); Hansen, 138 Idaho at 796, 69 P.3d at 1057. Whether consent was granted voluntarily, or was instead a product of coercion, is a question of fact to be determined by assessing the totality of all. the surrounding circumstances. State v. Varie, 135 Idaho 848, 852, 26 P.3d 31, 35 (2001); Schneckloth, 412 U.S. at 229, 93 S.Ct. at 2048-49, 36 L.Ed.2d at 863-64. This analysis specifically accounts for subtle coercive police tactics and questions, as well as the subjective state of the party granting consent to search. Id.
A voluntary decision is one that is “the product of an essentially free and unconstrained choice by its maker.” Schneckloth, 412 U.S. at 225, 93 S.Ct. at 2047, 36 L.Ed.2d at 862. An individual’s consent is involuntary, on the other hand, “if his will has been overborne and his capacity for self-determination critically impaired.” Id. Nothing in the record indicates that Haynes’s will was overborne or her capacity for self-determination critically impaired by the playing of the ALS advisories. To the contrary, the administrative penalties for refusing an evidentiary test for alcohol concentration are less severe and exert much less pressure than circumstances or scenarios where courts have held *50 consent to be rendered involuntary.[2] Haynes does not outline or argue the presence of any of these traditional coercion factors — she does not challenge the manner in which Trooper Keys conducted the traffic stop or arrest, the location or conditions of her consent, or any of the other typical indicia of coercion. Instead, her sole contention on appeal is that the administrative penalty scheme amounts to an unconstitutional condition because it presents her with the unconstitutional choice of submitting to an evidentiary test in violation of her constitutional rights or facing administrative penalties.[3]
“The voluntariness of consent is not impaired simply because one is faced with two unpleasant choices,” assuming that both choices are constitutionally sound. State v. Garcia, 143 Idaho 774, 779, 152 P.3d 645, 650 (Ct.App.2006). In this instance, Haynes is arguing that the choices offered by Idaho Code sections 18-8002 and 18-8002A constitute an invalid infringement on her constitutional right against unreasonable government searches and seizures. Thus, the issue at the center of this appeal is whether the administrative penalty scheme is reasonable and constitutionally sound.
“As the text of the Fourth Amendment indicates, the ultimate measure of the constitutionality of a government search is ‘reasonableness.’ ” Vernonia Sch. Dist. 47J v. Acton, 515 U.S. 646, 652, 115 S.Ct. 2386, 2390, 132 L.Ed.2d 564, 573-74 (1995). In a case like this, “where there was no clear practice, either approving or disapproving the type of search at issue, at the time the constitutional provision was enacted, whether a particular search meets the reasonableness standard is judged by balancing its intrusion on the individual’s Fourth Amendment interests against its promotion of legitimate governmental interests.” Id. at 652-53, 115 S.Ct. at 2390, 132 L.Ed.2d at 574 (quotations, citation, and footnote omitted). For the following reasons, the privacy intrusion imposed by breath alcohol searches under Idaho’s statutory scheme generally, and the manner in which *51 Trooper Keys actually conducted Haynes’s traffic stop, DUI arrest, and breath alcohol test, is slight or quite limited. In the DUI context, the United States Supreme Court has determined that the privacy invasion effected by breath tests is minimal. Skinner, 489 U.S. at 625, 109 S.Ct. at 1418, 108 L.Ed.2d at 665. In so holding, the Skinner Court reasoned, “Unlike blood tests, breath tests do not require piercing the skin and may be conducted safely outside a hospital environment and "with a minimum of inconvenience or embarrassment. Further, breath tests reveal [only] the level of alcohol in the [subject’s] bloodstream and nothing more.” Id.
In addition to the level of intrusion being slight or minimal, a driver like Haynes has a diminished expectation of privacy. At the time she was asked to submit to a breath test, Haynes had already been placed under arrest on probable cause of DUI. Such a driver has a diminished expectation of privacy because he or she is in custody. King, — U.S. —, 133 S.Ct. at 1978, 186 L.Ed.2d at 29-30. Further eroding Haynes’ expectation of privacy is the implied consent statute, which gives Haynes statutory notice that if reasonable grounds exist, “some reasonable police intrusion on [her] privacy is to be expected.” Id. at —, 133 S.Ct. at 1969, 186 L.Ed.2d at 20. For these reasons, the intrusion on Haynes’ personal privacy was slight or quite limited in this case.
On the other side of the scale, a statutory scheme which encourages a driver reasonably suspected of DUI to submit to testing revealing the level of alcohol concentration in his or her system promotes legitimate governmental interests. There is a compelling government interest in securing the safety of public roads, protecting lives, and deterring drivers from operating vehicles while intoxicated. Impaired drivers present an enormous threat to themselves and others, and the State has a strong interest in taking these drivers off the road. While drivers have a legitimate interest in avoiding the physical and privacy intrusions stemming from a breath alcohol test, this interest is far outweighed by the State’s public safety interest.
In summary, the intrusion on Haynes was quite limited and her expectation of privacy was diminished. These privacy factors are far outweighed by strong and compelling government public safety interests. The breath test, if properly calibrated and administered, has proven minimally invasive, reliable, effective, and prompt. Furthermore, a breath test is narrowly targeted and reveals only the level of alcohol concentration in a subject’s system. Most importantly, a breath test can only be administered with a subject’s cooperation and only if there are reasonable grounds to believe that subject is driving or in physical control of a motor vehicle while under the influence. In this ease, Haynes voluntarily consented to the test. The administrative penalty scheme does not vitiate this consent simply because it attaches a qualified evidentiary testing condition to the privilege of driving in Idaho, a condition which is constitutionally reasonable.
The administrative penalty scheme enacted by the legislature was clearly intended to encourage drivers reasonably suspected of DUI to submit to evidentiary testing. Specifically, the administrative penalties for refusing a test are more severe than the administrative penalties for taking and failing a test. This incentive, on its own, is not constitutionally infirm. Furthermore, these penalties are civil or administrative in nature, separate and apart from the criminal consequences of a failed test. It is reasonable for the Legislature to encourage or ineentivize this choice. Absent this type of framework, enforcement of DUI laws would be nearly impossible because a driver reasonably suspected of DUI would never rationally submit to an evidentiary test. Lastly, the ratios at issue here, specifically a one year license suspension for refusing a test as opposed to a 90 day suspension for a first failure, are not so out of proportion so as to render them unreasonable and unconstitutional.
For all of the reasons outlined above, Idaho Code sections 18-8002 and 18-8002A do *52 not attach an unconstitutional condition to driving and the privacy intrusions created by these statutory conditions are constitutionally justified and reasonable. Based on the totality of the circumstances and the facts presented in this case, Haynes’s consent to the breath alcohol test was voluntary and not vitiated by the trooper advising her of the administrative penalties for refusing the test. Accordingly, I would affirm the district court’s conclusion that Hayne’s voluntary consent to the breath test provided an exception to the warrant requirement.

. Law enforcement officers routinely rely upon a form promulgated by the Idaho Department of Transportation entitled "Notice of Suspension for Failure of Evidentiary Testing (Advisory for Sections 18-8002 and 18-8002A, Idaho Code)” prior to administering blood or breath alcohol tests to subjects suspected of DUI. This is commonly referred to as an "ALS Form” or reading the "ALS advisories.” In this case the ISP trooper played an audio recording which the trooper stated, and the parties stipulated, was virtually identical to the contents of the ALS Form. Whereas the ALS Form states, "I have reasonable grounds to believe the audio recording states, "The trooper has reasonable grounds to believe ..This is the only difference between the recording that was played to Haynes and the ALS Form. When the audio recording is not used, the ALS Form is read verbatim to DUI suspects.

. In finding consent to be vitiated or coerced, courts tend to consider whether there were numerous officers involved in the confrontation, Castellon v. United States, 864 A.2d 141, 155 (D.C.2004); United States v. Jones, 846 F.2d 358, 361 (6th Cir.1988); the location and conditions of the consent, including whether it was at night, United States v. Mapp, 476 F.2d 67, 77-78 (2d Cir.1973); whether the police retained the individual's identification, United States v. Chemaly, 741 F.2d 1346, 1353 (11th Cir.1984); whether the individual was free to leave, Ohio v. Robinette, 519 U.S. 33, 39-40, 117 S.Ct. 417, 421, 136 L.Ed.2d 347, 354-55 (1996); Chemaly, 741 F.2d at 1353; State v. Gutierrez, 137 Idaho 647, 651, 51 P.3d 461, 465 (Ct.App.2002); and, whether the individual knew of his right to refuse consent, Schneckloth, 412 U.S. at 248-49, 93 S.Ct. at 2059, 36 L.Ed.2d at 875; Chemaly, 741 F.2d at 1353; State v. Jones, 126 Idaho 791, 793, 890 P.2d 1214, 1216 (Ct.App.1995).

. Haynes relies upon a number of cases allegedly standing for the proposition that “[a] state may not pass a law that visits penalties upon a citizen for exercising its constitutional rights." Without diving into the nuances of all of these cases so as to distinguish them from the facts presented in this appeal, all of the cases relied upon by Haynes involve municipal schemes attaching civil or criminal penalties for refusing otherwise warrantless searches of dwellings. These cases have no bearing on this appeal because, for one, the privacy interest in a dwelling is much greater than the privacy interest a person has in his or her alcohol concentration while driving on public roads, and two, unlike the plaintiffs in these cases, Haynes was arrested and in custody, and thus had a diminished expectation of privacy, at the time the warrantless search was conducted.
As an illustration, one of the key cases Haynes relies upon for this proposition is Camara v. Municipal Court of San Francisco, 387 U.S. 523, 87 S.Ct. 1727, 18 L.Ed.2d 930 (1967). Camara involved a property owner facing penalties and fines for refusing to allow a warrantless inspection of his property, as required under the municipal housing code. The Camara Court reasoned that administrative searches of private dwellings intrude upon the interests protected by the Fourth Amendment. Id. at 534, 87 S.Ct. at 1733, 18 L.Ed.2d at 938. The Court held that the property owner had the right to insist on a warrant because there was no probable cause to believe that the property owner had violated any law and because there were no exigent circumstances preventing the government from obtaining a warrant. Camara, 387 U.S. at 539, 87 S.Ct. at 1736, 18 L.Ed.2d at 941. Haynes' situation is not similar to the facts of Camara, as there was probable cause to believe that she had been driving under the influence of alcohol and she had already been arrested on that charge. Thus, Haynes' reliance on Camara, and the other related cases, is unavailing.