**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 43112**

| | | |
|---|---|---|
| **STATE OF IDAHO,** | ) | **2016 Opinion No. 30** |
| | ) | |
| **Plaintiff-Respondent,** | ) | **Filed: April 29, 2016** |
| | ) | |
| **v.** | ) | **Stephen W. Kenyon, Clerk** |
| | ) | |
| **DANIEL CHERNOBIEFF,** | ) | |
| | ) | |
| **Defendant-Appellant.** | ) | |
| | ) | |

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County. Hon. Gerald F. Schroeder, District Judge; Hon. Daniel Steckel, Magistrate.

Decision of the district court, on intermediate appeal, affirming the magistrate's denial of motion to suppress, affirmed.

Alan Trimming, Ada County Public Defender; Mark P. Coonts, Deputy Public Defender, Boise, for appellant. Mark P. Coonts argued.

Hon. Lawrence G. Wasden, Attorney General; Jessica M. Lorello, Deputy Attorney General, Boise, for respondent. Jessica M. Lorello argued.

_____

GUTIERREZ, Judge

Daniel Chernobieff appeals from the district court's decision, on intermediate appeal, affirming the magistrate's denial of Chernobieff's motion to suppress his blood test results. He specifically argues that exigent circumstances did not exist to justify his warrantless blood draw. For the reasons explained below, we affirm.

**I.**

**FACTUAL AND PROCEDURAL BACKGROUND**

On September 11, 2013, Idaho State Police Trooper Comorosky pulled over Daniel Chernobieff during a routine traffic stop. Trooper Comorosky called for backup assistance, and Idaho State Police Corporal Sly arrived at the scene to conduct a driving under the influence (DUI) investigation.

1

According to Corporal Sly's testimony, he smelled alcohol coming from Chernobieff's vehicle. He also observed Chernobieff's eyes were glassy and bloodshot. When Corporal Sly first asked Chernobieff to step out of his vehicle, Chernobieff questioned why. Chernobieff eventually exited his vehicle. While he first spoke with Chernobieff, Corporal Sly thought Chernobieff tried to stick his hands in his pockets. Corporal Sly instructed Chernobieff to not place his hands in his pockets, and Chernobieff then appeared agitated. Corporal Sly asked Chernobieff some questions, but Chernobieff indicated he would refuse to answer any of the questions. During his discussion with Chernobieff, Corporal Sly smelled a strong odor of alcohol on Chernobieff's breath. Corporal Sly also observed that Chernobieff's speech seemed slow and lethargic.

Corporal Sly again attempted to ask Chernobieff questions, such as where Chernobieff was coming from. Chernobieff responded that he wanted to answer a question without being accused by Corporal Sly. Throughout the rest of the conversation, Chernobieff had difficulty completing some of his sentences. Based on these facts and his experience with DUI investigations, Corporal Sly requested Chernobieff perform standard field sobriety tests. Chernobieff refused and Corporal Sly subsequently placed Chernobieff under arrest. Corporal Sly played a recording of the "Notice of Suspension for Failure of Evidentiary Testing" form-- otherwise known as the "Administrative License Suspension" (ALS) form, which sets forth a list of consequences of not submitting to breath testing. Corporal Sly attempted to administer a breath alcohol test, but Chernobieff refused to take the test.

Corporal Sly then contacted the on-call deputy prosecutor to initiate the process of securing a warrant to draw Chernobieff's blood for alcohol testing. After learning the circumstances surrounding Chernobieff's arrest, the prosecutor indicated he would contact the on-call magistrate for a warrant. In the meantime, Corporal Sly transported Chernobieff to the Ada County jail.

Once Corporal Sly arrived at the jail, he again contacted the prosecutor to check in. The prosecutor instructed Corporal Sly to stay on the line while the prosecutor called the magistrate. The prosecutor testified that he called the magistrate's requested method of contact--his cell phone. The prosecutor called the number at least three times, possibly four or five times. He also left a voicemail. During one of the calls, he attempted to conference in the magistrate while on the phone with Corporal Sly. After failing to reach the magistrate, the prosecutor instructed

Corporal Sly to draw Chernobieff's blood pursuant to the exigent circumstance exception to the warrant requirement. A phlebotomist drew Chernobieff's blood and a sample was sent to the forensics lab for testing. The test results indicated Chernobieff's had a blood alcohol content of .226.

The State charged Chernobieff with an excessive DUI. Chernobieff filed a motion to suppress the blood test results because there were no warrant requirement exceptions to justify the warrantless blood draw. The magistrate heard argument at a motion hearing and denied the motion, determining that exigent circumstances existed to justify the warrantless blood draw because the events occurred between 11 p.m. and 12 midnight, Chernobieff delayed the process by not cooperating, the officer and prosecutor made a good faith effort to obtain a warrant, the magistrate was unavailable, and there was no system in place to reach a backup judge. Chernobieff appealed, and the district court affirmed. Chernobieff again appeals.

## II.

## ANALYSIS

When reviewing the decision of a district court sitting in its appellate capacity, our standard of review is the same as expressed by the Idaho Supreme Court. The Supreme Court reviews the magistrate record to determine whether there is substantial and competent evidence to support the magistrate's findings of fact and whether the magistrate's conclusions of law follow from those findings. *State v. Korn*, 148 Idaho 413, 415, 224 P.3d 480, 482 (2009). If those findings are so supported and the conclusions follow therefrom, and if the district court affirmed the magistrate's decision, we affirm the district court's decision as a matter of procedure. *Id*. Thus, we do not review the decision of the magistrate. *State v. Trusdall*, 155 Idaho 965, 968, 318 P.3d 955, 958 (Ct. App. 2014). Rather, we are procedurally bound to affirm or reverse the decision of the district court. *Id*.

The standard of review of a suppression motion is bifurcated. When a decision on a motion to suppress is challenged, we accept the trial court's findings of fact that are supported by substantial evidence, but we freely review the application of constitutional principles to the facts as found. *State v. Atkinson*, 128 Idaho 559, 561, 916 P.2d 1284, 1286 (Ct. App. 1996).

Chernobieff argues the district court erred in affirming the magistrate's denial of Chernobieff's motion to suppress evidence of his blood alcohol content because, based on the

totality of the circumstances, exigent circumstances did not exist to justify the warrantless blood draw.

The United States and Idaho Constitutions prohibit unreasonable searches and seizures of persons or property.[1]  Warrantless searches are presumed to be unreasonable and therefore violative of the Fourth Amendment.  *State v. Weaver*, 127 Idaho 288, 290, 900 P.2d 196, 198 (1995); *State v. Smith*, 152 Idaho 115, 118, 266 P.3d 1220, 1223 (Ct. App. 2011).  Requiring a person to submit to a blood draw for evidentiary testing is a search and seizure under the Fourth Amendment.  *Schmerber v. California*, 384 U.S. 757, 767 (1966).  Therefore, warrantless forced blood draws are presumptively unreasonable under the Fourth Amendment.  *Missouri v. McNeely*, ___ U.S. ___, ___, 133 S. Ct. 1552, 1558 (2013); *State v. Wulff*, 157 Idaho 416, 419, 337 P.3d 575, 578 (2014).  The State may overcome this presumption by demonstrating that a warrantless search fell within a well-recognized exception to the warrant requirement.  *Weaver*, 127 Idaho at 290, 900 P.2d at 198; *Smith*, 152 Idaho at 118, 266 P.3d at 1223.

One of the well-recognized warrant requirement exceptions involves exigency.  A warrant is not required if "'the exigencies of the situation' make the needs of law enforcement so compelling that the warrantless search is objectively reasonable under the Fourth Amendment."  *Mincey v. Arizona*, 437 U.S. 385, 393-94 (1978) (quoting *McDonald v. United States*, 335 U.S. 451, 456 (1948)).  Whether an exigency exists is based on the totality of circumstances, which is analyzed case by case.  *McNeely*, ___ U.S. at ___, 133 S. Ct. at 1556; *Wulff*, 157 Idaho at 420, 337 P.3d at 579.  A warrantless search under the exigent circumstance exception must be strictly circumscribed by the nature of the exigency that justifies the intrusion.  *State v. Buterbaugh*, 138 Idaho 96, 99, 57 P.3d 807, 810 (Ct. App. 2002).  The exigent circumstance exception does not apply where there is time to secure a warrant.  *State v. Robinson*, 144 Idaho 496, 501, 163 P.3d 1208, 1213 (Ct. App. 2007).

For instance, an officer is justified in performing a warrantless blood draw when he "might reasonably have believed that he was confronted with an emergency, in which the delay necessary to obtain a warrant, under the circumstances, threatened the destruction of evidence."  *Schmerber*, 384 U.S. at 770-71 (internal citation and quotations omitted).  The destruction of evidence in that case was the natural dissipation of the defendant's blood alcohol content because

---

[1]  Chernobieff does not argue the Idaho Constitution affords greater protection, so this Court follows the analysis pursuant to the Fourth Amendment to the United States Constitution.

the defendant was suspected of drunk driving. *Id.* The Court implied, however, that the natural dissipation of alcohol in the bloodstream does not constitute an exigency in every case. *Id.* The Court based its ruling on other factors relevant to a delay in securing a warrant, such as the fact that the defendant needed to be transported to a hospital for injuries suffered in a car accident and the fact that the officer needed to investigate the scene of the accident. *Id.*

Recently, the Court clarified its refusal to adopt a per se exception to the warrant requirement when it held that the natural dissipation of alcohol in the blood may support a finding of exigency in a specific case, as it did in *Schmerber*, but it does not do so categorically. *McNeely*, ___ U.S. at ___, 133 S. Ct. at 1563. In *McNeely*, the defendant was involved in a routine DUI case and he refused to submit to breath testing. *Id.* at ____, 133 S. Ct. at 1553-54. The officer did not attempt to secure a warrant before directing a lab technician to draw the defendant's blood. *Id.* at ____, 133 S. Ct. at 1254. The Court determined that the natural dissipation of blood alcohol alone was not enough to constitute an emergency sufficient to meet the exigency exception. *Id.* at ____, 133 S. Ct. at 1561. It noted, though, that "exigent circumstances justifying a warrantless blood sample may arise in the regular course of law enforcement due to delays from the warrant application process." *Id.* at ___, 133 S. Ct. at 1563. Factors "such as the procedures in place for obtaining a warrant or the availability of a magistrate judge" may establish an exigency. *Id.* at ___, 133 S. Ct. at 1568. For example, if an officer attempted to secure a warrant but was unable to reach the on-call magistrate, such frustration to the warrant application process may constitute an exigency sufficient to justify a warrantless blood draw. *Sutherland v. State*, 436 S.W.3d 28, 40 (Tex. Ct. App. 2014); *State v. Flannigan*, 978 P.2d 127, 131 (Ariz. Ct. App. 1998).[2]

In *Sutherland*, an officer stopped the defendant's vehicle and administered field sobriety tests on the defendant. *Id.* at 31. The officer arrested the defendant based on his performance of

---

[2]  Chernobieff cites to several cases in which the defendants were involved in accidents and taken to the hospital so the delay in hospital transportation and investigation of the accident, coupled with the dissipation of blood alcohol content, created an exigency. However, "the focus of exigent circumstances . . . is not on the delay attendant to an investigation . . . but on the delay necessary to obtain a warrant." *Douds v. State*, 434 S.W.3d 842, 853 (Tex. App. 2014), *rev'd on procedural grounds by Douds v. State*, 472 S.W.3d 670 (Tex. Crim App. 2015). The court in *Douds* noted that although a car accident resulting in injuries that require medical attention could create a delay, it recognized that the unavailability of a magistrate may create an exigency even without an automobile accident or hospital visit. *Id.*

the tests. *Id.* The defendant refused to submit to breath testing, so the officer transported the defendant to jail. *Id.* The officer did not attempt to secure a warrant, and a blood draw was performed without a warrant. *Id.* at 40. The defendant argued that the exigent circumstance exception did not apply to his situation, and the court agreed. *Id.* at 32, 41. In reviewing the totality of circumstances, the court acknowledged that metabolization of alcohol in the bloodstream and the subsequent loss of evidence are factors to consider in determining whether exigent circumstances existed to eliminate the need for a warrant. *Id.* at 40. However, no other factors demonstrated an exigency in *Sutherland*. *Id.* at 40-41. There were no obstacles in obtaining a warrant because there was evidence that a magistrate was available and on duty, but the officer made no effort to obtain a warrant. *Id.* at 31. Therefore, the court concluded that the officer was not faced with exigent circumstances to justify a warrantless blood draw. *Id.* at 41.

Here, the record indicates an exigency existed based on the totality of circumstances. During a motion hearing, Corporal Sly testified that he smelled alcohol coming from inside Chernobieff's vehicle and on Chernobieff's breath. He noticed Chernobieff's eyes were glassy and bloodshot and observed that Chernobieff's speech was slow and lethargic. Chernobieff had difficulty completing some of his sentences. Moreover, Chernobieff appeared agitated. When Corporal Sly asked Chernobieff to submit to breath testing, Chernobieff refused. Unlike the officer in *Sutherland*, the officer here recognized the need to secure a warrant before performing a blood draw and contacted a deputy prosecutor to initiate the warrant application process. Corporal Sly described his encounter with Chernobieff, and the prosecutor concluded that they should seek approval for a warrant from an on-call magistrate.

The prosecutor testified that he contacted the magistrate at least three times and left a voicemail. When the prosecutor was unable to reach the magistrate, he instructed Corporal Sly to perform the warrantless blood draw based on the exigency of the situation (the inability to secure a warrant in a timely manner).

Relying upon this testimony, the magistrate found that Chernobieff delayed the process by refusing to cooperate and submit to blood alcohol testing. The magistrate also determined that Corporal Sly and the prosecutor made good faith attempts to follow procedures to secure a search warrant. However, the magistrate noted, there was only one on-call judge and the judge was unavailable. Based on the totality of these circumstances, the district court did not err in

affirming the magistrate's denial of Chernobieff's motion to suppress because exigent circumstances justified the warrantless blood draw.

## III.

## CONCLUSION

The district court did not err in affirming the magistrate's denial of Chernobieff's motion to suppress his blood test results because the unavailability of the magistrate and the natural dissipation of Chernobieff's blood alcohol content created an exigency sufficient to justify the warrantless blood draw. Accordingly, we affirm the district court's decision.

Chief Judge MELANSON and Judge GRATTON **CONCUR**.